

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NOS. PD-1584-11 & 1585-11

### MAURICIO CELIS, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRTEENTH COURT OF APPEALS
### NUECES COUNTY

ALCALA, J., announced the judgment of the Court and delivered an opinion in which KELLER, P.J., PRICE and KEASLER, JJ., joined. KELLER, PJ., filed a concurring opinion in which PRICE and KEASLER, JJ., joined. COCHRAN, J., filed a concurring opinion in which WOMACK and JOHNSON, JJ., joined. MEYERS and HERVEY, JJ., did not participate.

## O P I N I O N

In deciding the petition for discretionary review filed by Mauricio Celis, appellant, we address three jury-charge complaints. First, we determine that the offense of falsely holding oneself out as a lawyer, as it applies here, does not require an instruction as to a culpable mental state beyond the intent expressly prescribed by the plain language in that

statute. *See* TEX. PENAL CODE § 38.122. Second, we conclude that appellant was not entitled to an instruction on a mistake-of-fact defense because his requested instruction did not negate the culpability required for the offense. *See* TEX. PENAL CODE § 8.02(a). Third, we hold that the court of appeals properly determined that the trial court's instruction on the definition of "foreign legal consultant" was not an improper comment on the weight of the evidence. *See* TEX. CODE CRIM. PROC. art. 36.14. We affirm.

## I. Background

It is undisputed that, although appellant was never licensed to practice law in Texas or any other jurisdiction, he continuously held himself out as a lawyer in Texas over a period of several years in a lucrative business.[1] Appellant acknowledged that he did not have a "cedula," or Mexican law license, nor a certificate from Mexico's Ministry of Education, which documents that a person currently meets the requirements to practice law in Mexico. Rather, he testified that he has a diploma in judicial sciences and that he, therefore, believed that he was "considered a lawyer in Mexico." He called two witnesses who testified that every Mexican citizen who was of legal age and sound mind is a "licenciado," meaning a person authorized to practice certain types of law in Mexico.

Appellant was charged with 23 counts of falsely holding himself out as a lawyer in

---

[1] This conduct included stating on a business card and a web page that he was an attorney and licensed to practice law in Mexico; signing a legal document in a place designated for an attorney's signature; stating, in a professional-liability insurance application, that he was admitted to the bar in 2000, had been a full-time attorney for seven years, and was a member in good standing of the state bar of Mexico; and accepting checks for attorney's fees amounting to more than $1.3 million.

violation of Texas Penal Code Section 38.122, which, hereafter, we refer to as the "false-lawyer statute." TEX. PENAL CODE § 38.122. With respect to a culpable mental state, the trial court's instructions required the jury to determine only whether appellant intended to obtain an economic benefit for himself in holding himself out as a lawyer. The instructions did not include a culpable mental state with respect to the remaining elements that alleged that appellant had held himself out as an attorney, was not currently licensed to practice law, and was not in good standing with the State Bar of Texas and other applicable authorities. Tracking the language of the false-lawyer statute, the charge instructed, in relevant part,

> Now, if you find from the evidence beyond a reasonable doubt that on or about [date], in Nueces County, Texas, the Defendant, Mauricio Celis, did then and there, with intent to obtain an economic benefit for himself, hold himself out as a lawyer, to wit: [by manner and means], and the defendant was not then and there licensed to practice law in this state, another state, or a foreign country and was not then and there in good standing with the State Bar of Texas and the state bar or licensing authority of any state or foreign country where the defendant was licensed to practice law, then you will find the defendant guilty of the offense of falsely holding himself out as a lawyer as charged in the indictment.

*See* TEX. PENAL CODE § 38.122. In declining to instruct the jury on an additional culpable mental state, the court overruled appellant's request to add the word "intentionally" before the phrase "did then and there" so as to require the jury to find that he intended every element of the offense. The trial court also overruled appellant's request for a mistake-of-fact instruction on his alleged mistaken belief that he was licensed to practice law by, and in good standing with, the licensing authority of Mexico.

The charge defined "good standing," stating,

"Good standing with the State Bar of Texas" means:

(1) Being a "Member in Good Standing" of the State Bar of Texas; or

(2) Being certified to practice in Texas as a Foreign Legal Consultant by the Texas Board of Law Examiners.

A "Member in Good Standing" of the State Bar of Texas is someone who meets and complies with all applicable requirements of the Rules of the Supreme Court of Texas governing admission to the bar of Texas, and who is not in default of payment of dues and who is not under suspension from practice.

A "Foreign Legal Consultant" is someone certified under the Rules of the Supreme Court of Texas governing admission to the Bar of Texas, and who is considered a lawyer affiliated with the Bar of Texas.

Appellant objected to the instruction defining the term "foreign legal consultant" as an improper comment on the weight of the evidence, which the trial court overruled. The jury found appellant guilty on 14 counts and assessed a 10-year sentence for each offense, probated for 10 years.

On appeal, appellant challenged the trial court's overruling of his three jury-charge complaints. The court of appeals upheld the trial court's rulings, determining that the statute's culpable mental state was limited to the intent to obtain an economic benefit; that no mistake-of-fact instruction was required; and that the trial court properly defined the term "foreign legal consultant." We granted review of appellant's three jury-charge issues.[2]

---

[2] Appellant's three jury-charge issues state:

(1) The court of appeals erred by holding that a culpable mental state was not required under [the false-lawyer statute].

## II. Culpable-Mental-State Analysis

In his first issue for discretionary review, appellant contends that the court of appeals erred by overruling his challenge to the trial court's denial of an instruction on a culpable mental state beyond the one prescribed in the statute. As on direct appeal, he contends that the statute defining the offense of falsely holding oneself out as a lawyer is silent on the requirement of a culpable mental state and does not plainly dispense with one, and that the trial court, therefore, was required to instruct as to one. *Celis v. State*, 354 S.W.3d 7, 27 (Tex. App.—Corpus Christi 2011) (citing TEX. PENAL CODE §§ 6.02, 38.122). The court of appeals was "not persuaded that the [statute] is silent on the requirement of a culpable mental state." *Id.* It held that the statute prescribed a mental state through the requirement that the defendant act with the "intent to obtain an economic benefit for himself," which satisfied "the traditional mens rea requirement of the criminal law." *Id.* We agree.

### A. Standard of Review

The trial court must give the jury a written charge that sets forth the law applicable to the case. TEX. CODE CRIM. PROC. art. 36.14. A charge that does not set out all of the essential elements of the offense is fundamentally defective. *Martin v. State*, 200 S.W.3d 635, 639 (Tex. Crim. App. 2006); *Zuckerman v. State*, 591 S.W.2d 495, 496 (Tex. Crim.

---

(2) The court of appeals erred by holding that appellant was not entitled to a charge on mistake of fact.

(3) The court of appeals erred by holding that inclusion of a definition of the term "foreign legal consultant" in the jury charge was not error.

App. 1979). Appellate review of claims of jury-charge error involves a determination of whether the charge is erroneous and, if it is, a harm analysis. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). Because there is no charge error in this case, we need not conduct a harm analysis.[3]

### B. Presumption of Culpable Mental State and Statutory Interpretation

"If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element." TEX. PENAL CODE § 6.02(b); *see also Aguirre v. State*, 22 S.W.3d 463, 472 (Tex. Crim. App. 1999). Therefore, the two pertinent questions are whether the statute defining the offense of holding oneself out as a lawyer prescribes a culpable mental state and, if not, whether a mental state is nevertheless required. This Court has enumerated several factors that courts may consider "in deciding whether the legislature meant to impose liability without fault or, on the other hand, really meant to require fault though it failed to spell it out clearly." *Aguirre*, 22 S.W.3d at 475. Factors relevant to this case include (1) the language of the statute and (2) the nature of the conduct regulated, the risk of harm to the public, and the defendant's ability to ascertain facts. *Id*. at 475-76.

---

[3]  When a defendant properly preserved a complaint as to the charge, the standard of harm is whether "the error appearing from the record was calculated to injure the rights of defendant," which we have construed as "some harm." TEX. CODE CRIM. PROC. art. 36.19; *Trevino v. State*, 100 S.W.3d 232, 242 (Tex. Crim. App. 2003). Conversely, unpreserved charge error warrants reversal only when the error resulted in egregious harm. *Pickens v. State*, 165 S.W.3d 675, 680 (Tex. Crim. App. 2005).

### 1. Plain Language Suggests That No Additional Culpable Mental State Is Required

Statutory "words and phrases shall be read in context and construed according to the rules of grammar and common usage." TEX. GOV'T CODE § 311.011(a); *Tovar v. State*, 978 S.W.2d 584, 586 (Tex. Crim. App. 1998). It is well settled that the complete omission from a statute of any mention of intent will not necessarily be construed as eliminating that element from an offense. *Aguirre,* 22 S.W.3d at 471. However, the prescription of a mental state as to certain portions of a statute, but not as to others, is compelling evidence that the Legislature intended to dispense with a mental state as to the latter. *Id.* at 473 (observing that "omission of a culpable mental state from only one of the four sections was a clear implication of the legislature's intent to dispense with a mental element in that section").

The statute describing the offense of holding oneself out as a lawyer states,

> A person commits an offense if, with intent to obtain an economic benefit for himself or herself, the person holds himself or herself out as a lawyer, unless he or she is currently licensed to practice law in this state, another state, or a foreign country and is in good standing with the State Bar of Texas and the state bar or licensing authority of any and all other states and foreign countries where licensed.

TEX. PENAL CODE § 38.122(a). It is plain from the structure of the text in Subsection (a) that the only mental state prescribed—"with intent"—modifies and applies only to the element "to obtain an economic benefit for himself or herself." *Id.* The most natural grammatical reading of the statute suggests that that mental state does not extend to either (1) the element set forth after that phrase, i.e., "the person holds himself . . . out as a lawyer," or (2) the

elements expressed in the subsequent dependent clause beginning with "unless," i.e., the licensing and good-standing requirements. *See id.* In other words, the statute does not expressly prescribe a mental state as to anything other than acting to obtain an economic benefit. This prescription of a mental state as to one element and not as to others sufficiently demonstrates the Legislature's intent to dispense with a mental state as to those other elements. *See Aguirre*, 22 S.W.3d at 473; *see also Ex parte Smith* 645 S.W.2d 310, 311-12 (Tex. Crim. App. 1983) (holding that theft statute requires only statutorily prescribed intent "to deprive the owner of property" and not "an independent culpable mental state" with respect to appropriating property without owner's consent). We are unpersuaded by appellant's argument that the Legislature must more expressly indicate its intent to dispense with a culpable mental state than by its specific inclusion of a culpable mental state as to some elements and its exclusion of that requirement as to others.

In other cases involving grammatically similar statutes, we have construed prescription of a mental state only as to some elements as evincing legislative intent to dispense with a mental state as to other elements. In *Long v. State*, in which we interpreted the "stalking statute,"[4] we concluded that, by prescribing a mental state in one section of the

---

[4] The former stalking statute provided, "(a) A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he . . . (7)(A) on more than one occasion engages in conduct directed specifically toward the [victim] . . . and (C) on at least one of those occasions engages in the conduct after the [victim] has reported to a law enforcement agency the conduct . . . ." Former TEX. PENAL CODE § 42.07(a) (West 1993). The *Long* Court concluded that, given the mental state prescribed in Section (a), the Legislature plainly dispensed with a mental state in Subsection (7)(C). *Long v. State*, 931 S.W.2d 285, 291 (Tex. Crim. App. 1996).

statute but omitting a mental state in a subsequent subsection, "the legislature plainly dispensed with any additional mental state in [that subsection] that might otherwise be required." 931 S.W.2d 285, 291 (Tex. Crim. App. 1996). Similarly, in *Johnson v. State*, we interpreted the indecency-with-a-child statute[5] as dispensing with a mental state as to the child's age in keeping with "the clear legislative intent." 967 S.W.2d 848, 849 (Tex. Crim. App. 1998). And in *Lomax v. State*, in which we held that the felony-murder statute[6] did not require a culpable mental state, we stated that "[i]t is significant and largely dispositive that [the felony-murder subsection] omits a culpable mental state while the other two subsections in [that section] expressly require a culpable mental state." 233 S.W.3d 302, 304 (Tex. Crim. App. 2007). We concluded that this was "a clear implication of the legislature's intent to

---

[5] The former indecency-with-a-child statute states, in relevant part, "(a) A person commits an offense if, with a child younger than 17 years and not his spouse, whether the child is of the same or opposite sex, he: (1) engages in sexual contact with the child; or (2) exposes his anus or any part of his genitals, knowing the child is present, with intent to arouse or gratify the sexual desire of any person." Former TEX. PENAL CODE § 21.11 (West 1998). Judge Price, concurring, noted that, because subsection (a)(2) "contains the mental elements 'knowing' and 'intent,' and [because] those same mental elements are apart from [subsection (a)], which specifies the age of the victim, the intent of the legislature was to dispense with a culpable mental state as to the victim's age." *Johnson v. State*, 967 S.W.2d 848, 852 (Tex. Crim. App. 1998) (Price, J., concurring). Citing *Long*, Judge Price reasoned that, although there was no statutory language expressly dispensing with the mental-state requirement, "it is precisely the *absence* of a culpable mental state as to the victim's age, when the legislature has prescribed mental elements as to other portions of the offense, that makes the legislative intent clear." *Id.* (citing *Long*, 931 S.W.2d at 291).

[6] The felony-murder statute provides that a person commits the offense of murder if he "commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE § 19.02(b)(3).

dispense with a mental element in that [sub]section." *Id*.[7] The plain language used to describe the offense of holding oneself out as a lawyer, therefore, suggests that a person can be held criminally responsible for holding himself out as a lawyer if he does not satisfy the licensing and good-standing requirements, so long as he does so intending to obtain an economic benefit.

Furthermore, we note that the statute first defines holding oneself out as a lawyer for profit as criminal, followed by the subordinate conjunction "unless." TEX. PENAL CODE § 38.122. This indicates that the Legislature intended to criminalize the conduct "unless" certain criteria are met. *See id*. In short, the statute defines conduct as unlawful unless other circumstances exist. This further indicates that the Legislature did not intend for a mental state to apply to the circumstances set forth in the statute that render the otherwise unlawful conduct lawful.

### 2. Nature of Conduct Suggests That No Additional Culpable Mental State Is Required

#### a. Acting as a lawyer is highly regulated conduct

The statute at issue in this case is substantially analogous to the ordinance construed in *Tovar v. State*, in which this Court held that criminal liability may be imposed without

---

[7] *See also Schultz v. State*, 923 S.W.2d 1, 2 (Tex. Crim. App. 1996) (construing the child-abandonment statute at Texas Penal Code Section 22.041(b), holding that "the fact that 'intentionally' immediately precedes 'abandons' means that the prescribed mental state is connected with the act of abandonment itself" rather than element of surrounding circumstances); *Neill v. State,* 229 S.W.2d 361, 363 (Tex. Crim. App. 1950) (construing meat-inspection statute, which prescribed mental states as to some elements and not as to others, as not requiring proof of a mental state as to latter elements).

proof of a culpable mental state for certain types of conduct that place upon a person a duty to understand and comply with applicable legal requirements. 978 S.W.2d at 587. Interpreting the Closed Meeting Act,[8] we held that it did not require proof of a mental state with respect to whether a closed meeting was statutorily prohibited, although it did expressly prescribe a mental state as to other elements. *Id.* at 587-88. Examining its language "and the rules of grammar and common usage," we determined that it plainly dispensed with a culpable mental state as to whether the meeting was not permitted to be closed. *Id.* at 587. We also observed that the plain-language reading was consistent with the Act's "purpose of safeguarding the public's interest in knowing the workings of its governmental bodies" and noted that it "places a duty upon members of governmental bodies to hold open meetings and a concomitant duty to find an exception to the general rule if they desire to have a closed meeting." *Id*. It criminally sanctioned "neglect where the law requires care, or inaction where it imposes a duty." *Id.*[9]

---

[8]     The Closed Meeting Act provides, "A member of a governmental body commits an offense if a closed meeting is not permitted under this chapter and the member knowingly: (1) calls or aids in calling or organizing the closed meeting, whether it is a special or called closed meeting; (2) closes or aids in closing the meeting to the public, if it is a regular meeting; or (3) participates in the closed meeting, whether it is a regular, special, or called meeting." TEX. GOV'T CODE § 551.144(a); *Tovar v. State*, 978 S.W.2d 584, 586 (Tex. Crim. App. 1998).

[9]     By comparison, in *Aguirre v. State*, we construed a municipal ordinance that provided that "[n]o person shall own, operate or conduct any business in an adult bookstore, adult motion picture theater or nude live entertainment club within one thousand feet of" certain types of property. 22 S.W.3d 463, 464 n.1 (Tex. Crim. App. 1999). Although the ordinance did not expressly prescribe any mental state, the Court held that proof of a culpable mental state was required. *Id*. at 476. Among other extratextual factors, the Court considered whether the statute defined a strict-liability offense. *Id*. at 472. The Court explained that, although "[s]ome features of the ordinance are consistent with imposing strict liability . . . it is hardly in the class of public-safety statutes that we

Like the ordinance in *Tovar*, the false-lawyer statute delineates a mental state, though not a traditional mens rea, or "criminal intent." *See Tovar*, 978 S.W.2d at 590. This statute, which applies to those who hold themselves out as lawyers for economic gain, evinces a legislative intent to impose a duty of care upon those who engage in that conduct. *See* TEX. PENAL CODE § 38.122. The statute, therefore, regulates conduct for which "special skill and attention may reasonably be demanded." *See Aguirre*, 22 S.W.3d at 475 n.44. The special skill of practicing law (and representing oneself as a lawyer) has long been subject to the attention of, and strict regulation by, the States.[10] This regulation is intended to protect the public from untrained individuals, who endanger the public's personal and property rights, as well as the orderly administration of the judicial system. *See Brown v. Unauthorized Practice of Law Committee*, 742 S.W.2d 34, 41-42 (Tex. App.—Dallas 1987, writ denied) ("The objective is to protect the public against injury from acts or services, professional in nature, deemed by both the legislature and the courts to be the practice of law, done or performed by those not deemed by law to be qualified to perform them.").

---

have found to impose strict liability." *Id.* at 476. We noted that the ordinance was unlike many public-welfare statutes that "presuppose a continuous activity, such as carrying on a business." *Id.* at 475. We observed that, with respect to such activity, "(a) special skill and attention may reasonably be demanded, and (b) if the law is broken there will be a suspicion that it was a deliberate breach due to self-interest." *Id.* at 475 n.44 (internal quotations and citations omitted).

[10]     *See Cummings v. Missouri*, 71 U.S. 277, 319 (1866) (states may impose reasonable regulations on practice of law); *NAACP v. Button,* 371 U.S. 415, 456 (1963) ("[T]he regulation of professional standards for members of the bar comes to us with even deeper roots in history and policy, since courts for centuries have possessed disciplinary powers incident to the administration of justice."); *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1066 (1991) ("In the United States, the courts have historically regulated admission to the practice of law before them.").

The plain language reveals the Legislature's intent to impose upon those who hold themselves out as lawyers for an economic benefit a duty to know and comply with applicable regulations, enforceable by criminal penalties.[11] Balancing relative hardships, the Legislature has placed the burden of complying with conditions imposed for the protection of the public upon those who hold themselves out as lawyers for profit, rather than placing upon the public the burden of determining whether an individual is qualified and eligible to provide legal services. *See United States v. Dotterweich*, 320 U.S. 277, 280-81 (1943). Given the nature of the conduct regulated and the public expectation that such conduct is subject to stringent regulation, this is further indication that the Legislature intended to dispense with any culpable mental state beyond that which it prescribed.

We conclude that the plain language of the false-lawyer statute requires proof of a mental state only as to the economic-benefit element and plainly dispenses with any additional culpable-mental-state requirement. TEX. PENAL CODE § 38.122. It imposes upon those who hold themselves out as lawyers a duty to be aware of, and comply with, statutory requirements. This interpretation is supported by the statutory language and policy considerations and does not yield an absurd result. The trial court, therefore, did not err in

---

[11] Our interpretation is further supported by the fact that the Legislature limited the statute to penalize only those who engage in the proscribed conduct with intent to gain an economic benefit. This significantly narrows the scope of the statute so as to avoid ensnaring those who offer free advice that happens to be legal in nature, such as the "jailhouse lawyer" or individuals working pro bono, or those who represent themselves as lawyers for other reasons, such as currying social favor. *See Ex parte Manrique*, 40 S.W.3d 552, 554 (Tex. App.—San Antonio 2001, no pet.) (noting that "[p]urely gratuitous comments do not fall within the penal statute" given statute's requirement that intent to obtain an economic benefit be proven).

instructing as to only the mental state expressly prescribed in the statute.

### b. Unlawfully acting as a lawyer is not a "circumstances" type offense

Appellant argues that the false-lawyer statute is analogous to statutes that we have interpreted as requiring a culpable mental state as to the nature of the conduct, the result of the conduct, or the circumstances surrounding the conduct, citing in support *McQueen v. State*, 781 S.W.2d 600 (Tex. Crim. App. 1989). In *McQueen*, we construed the statute defining unauthorized use of a motor vehicle, which provides, "A person commits an offense if he intentionally or knowingly operates another's boat, airplane, or motor-propelled vehicle without the effective consent of the owner." *Id.* at 603 (citing TEX. PENAL CODE § 31.07(a)). We held that "a culpable mental state applies to whether the defendant knew his use of the motor vehicle was without the effective consent of the owner." *Id. McQueen*, however, is distinguishable in two ways. First, the language of that statute was ambiguous as to whether the prescribed mental state modified only the conduct element "operates" or also modified the circumstance element, without the owner's consent.[12] Here, the statutory language plainly indicates that "intent" modifies only the economic-benefit element and not the non-

---

[12]    *McQueen v. State*, 781 S.W.2d 600, 603-04 (Tex. Crim. App. 1989) ("The confusion concerning culpability in an unauthorized use of a motor vehicle case stems in part from the fact that the culpable mental state of 'intentionally or knowingly' prescribed by the statutory language does not syntactically modify the circumstances surrounding the conduct but instead precedes the act of operating a vehicle."); *see also Liparota v. United States*, 471 U.S. 419, 424 n.7 (1985) (interpreting statute that provided that "whoever knowingly uses, transfers, acquires, alters, or possesses coupons or other authorization cards in any manner not authorized by [the statute]" is subject to a fine and imprisonment, Supreme Court held that, "[a]s a matter of grammar the statute is ambiguous; it is not at all clear how far down the sentence the word 'knowingly' is intended to travel").

lawyer-status elements.

Second, critical to the *McQueen* analysis was that the conduct regulated by the statute—operating another's motor-propelled vehicle—is an "otherwise lawful act" that becomes criminal only under certain circumstances, namely, when done without the owner's consent. *Id.* at 604. Declining to construe the statute as dispensing with a mental state as to that element, we observed that "[t]o require culpability only as to the otherwise lawful act of operating a vehicle wholly fails to safeguard conduct that is without guilt from condemnation as criminal." *Id.* We, therefore, concluded that this was a "circumstances" type offense, which requires application of a culpable mental state to the criminalizing circumstances. *Id.* at 603. By contrast, holding oneself out as a lawyer for economic gain is not an "otherwise lawful act"; rather, as previously discussed, it is conduct that has long been subject to a host of strict regulations that is prohibited "unless" a person complies with those numerous regulations. *See* TEX. PENAL CODE § 38.122. Unlike *McQueen*, the "circumstances" in this case—licensing and good standing with the proper authorities—render an otherwise unlawful act—holding oneself out as a lawyer for profit—lawful.[14] We conclude that, in this case, the Legislature intended to limit the mental-state requirement to the economic-benefit element and to dispense with it as to the other statutory elements.[13]

---

[13]  In general, courts have required proof of a culpable mental state as to conduct that would otherwise be innocent. *See Lugo-Lugo v. State,* 650 S.W.2d 72, 88 (Tex. Crim. App. 1983) (explaining that, when "circumstances surrounding conduct could make an otherwise benign act dangerous . . . an additional culpable mental state as to that 'conduct element' would be required");

## C. *Satterwhite* **Is Inapposite**

Appellant contends that, in *Satterwhite v. State*, this Court held that the offense of holding oneself out as a lawyer required proof of a culpable mental state beyond intent to obtain an economic benefit. 979 S.W.2d 626 (Tex. Crim. App. 1998). In *Satterwhite*, this Court stated, "The record before us reflects that appellant intentionally and knowingly violated [the false-lawyer statute]." *Id.* at 628.  However, this passing reference to criminal intent lacked any analysis as to whether the statute required proof that a defendant acted intentionally or knowingly.  Furthermore, this was non-binding dictum because the issue on appeal was whether "a retroactive return to pre-suspension status via the payment of past-due State Bar dues excuses an attorney from prosecution for illegal conduct committed by an attorney during that attorney's period of suspension." *Id.* at 627; *see also Woolridge v. State*, 827 S.W.2d 900, 905 (Tex. Crim. App. 1992) (dicta not binding). We disapprove of any suggestion in *Satterwhite* that the State must prove any additional mental states beyond that expressly prescribed in the statute.

---

*Liparota,* 471 U.S. at 426 (avoiding construing statute to dispense with mens rea where doing so would "criminalize a broad range of apparently innocent conduct"); *Morissette v. United States*, 342 U.S. 246, 275-76 (1952) (although appellant had admitted the conduct, "that isolated fact is not an adequate basis on which the jury should find the criminal intent to steal or knowingly convert, that is, *wrongfully* to deprive another of possession of property"). By contrast, courts generally have not required proof of an additional culpable mental state when a statute has already prescribed a culpable mental state as to at least one element of the offense. *See Schultz,* 923 S.W.2d at 4 (explaining that offense of abandoning or endangering a child can dispense with requirement of awareness of danger because person subject to that offense has already assumed a duty to act reasonably, and it is the neglect of this duty that is criminalized);  *Lomax v. State*, 233 S.W.3d 302, 305 n.7 (Tex. Crim. App. 2007) (felony-murder statute may dispense with mental-state requirement because statute "still requires a defendant to commit a felony involving a clearly dangerous act").

### D. Plain-language reading does not yield an absurd result

Appellant next contends that construing the false-lawyer statute as dispensing with a mental state as to the licensing and good-standing elements would violate a defendant's due-process rights and, therefore, could not have been the Legislature's intent. However, appellant's cited cases focus not on due process, but on determining congressional intent in construing federal statutes. *See Morissette v. United States*, 342 U.S. 246, 248 (1952) (construing congressional intent as requiring proof of intent in conversion statute); *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 68 (1994) (child-pornography statute requires knowledge of victim's age); *Staples v. United States*, 511 U.S. 600, 618 (1994) (gun-registration statute requires knowledge of type of gun possessed). Here, in examining the false-lawyer statute, we have determined that the Legislature intended to dispense with a culpable mental state as to the licensing and good-standing requirements.[14]

The court of appeals, therefore, did not err in upholding the jury charge, which

---

[14] We express no opinion as to whether there might be other due-process concerns that could become pertinent under different circumstances, such as an attorney licensed in Texas who had been in good standing with the State Bar and continued to practice law because he had not received notification by the State Bar regarding his change in status. The present case does not contain facts that show that appellant had ever been in compliance with the State Bar rules or that he was deprived of notice of a change in his status with the State Bar. Furthermore, appellant does not challenge the constitutionality of the false-lawyer statute. We do not reach the question of whether it may be unconstitutional as applied to another defendant under different circumstances. Furthermore, in *United States of America v. Ransom*, the Tenth Circuit observed that the Supreme Court has held that, "[i]n order to show that the exercise of [the Legislature's] power is inconsistent with due process, [an] appellant must demonstrate that the practice adopted by the legislature 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" 942 F.2d 775, 777 (10th Cir. 1991) (citing *Snyder v. Massachusetts*, 291 U.S. 97 (1934)).

instructed only as to the statutorily prescribed mental state of intent to obtain an economic benefit. *See Celis*, 354 S.W.3d at 28. We overrule appellant's first issue.

### III. Jury Instruction on Mistake of Fact

In his second issue, appellant contends that the court of appeals erred by overruling his challenge to the trial court's denial of a mistake-of-fact instruction. *Id*. The court of appeals held that appellant's alleged mistake did not negate the kind of culpability required for commission of the offense as statutorily required. *Id*. at 29 (citing TEX. PENAL CODE § 8.02(a)). That mistake, according to the court of appeals, may have been a mistake of law, but appellant did not request that type of instruction. *Id*.

### A. Current Law Applicable to Mistake-of-Fact Defense

A defendant is entitled to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or uncontradicted, and regardless of how the trial court views the credibility of the defense. *Allen v. State*, 253 S.W.3d 260, 267 (Tex. Crim. App. 2008). The statute governing the mistake-of-fact defense provides that it is "a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense." TEX. PENAL CODE § 8.02(a). When he raises evidence of a mistaken belief as to the culpable mental state of the offense, a defendant is entitled to an instruction on mistake of fact upon request. *Beggs v. State*, 597 S.W.2d 375, 378 (Tex. Crim. App. 1980); *Granger v. State*, 3 S.W.3d 36, 41 (Tex. Crim. App. 1999); *Giesberg v. State*, 984 S.W.2d

245, 246 (Tex. Crim. App. 1998).

"By 'kind of culpability' is meant 'culpable mental state.'" *Beggs*, 597 S.W.2d at 378. In *Beggs*, this Court determined that Beggs was entitled to an instruction on the defense of mistake of fact if there was evidence that, through a mistake, she formed a reasonable belief about a matter of fact and her mistaken belief would negate her intent or knowledge. *Id*. The instruction on mistake of fact, therefore, applies only with respect to elements that require proof of a culpable mental state. *Id*.

Since *Beggs* was decided over 30 years ago, this Court has always applied mistake of fact to only culpable mental states. *See McQueen*, 781 S.W.2d 600; *Willis v. State,* 790 S.W.2d 307, 314 (Tex. Crim. App. 1990); *Miller v. State*, 815 S.W.2d 582, 585 (Tex. Crim. App. 1991); *Granger*, 3 S.W.3d at 41. We respectfully disagree with the suggestion in the concurring opinion by the Honorable Judge Cochran that suggests that, in *Thompson v. State*, 236 S.W.3d 787 (Tex. Crim. App. 2007), the Court expanded the *Beggs* definition for "kind of culpability" so that it would apply to elements that do not require proof of a culpable mental state. *See Beggs*, 597 S.W.2d at 378. In *Thompson*, the Court discussed the history of the mistake-of-fact instruction by examining the Model Penal Code and the proposed revised Texas Penal Code, concluding that, although these codes differ in many respects, certain elements from both codes were incorporated into our current law. *Thompson*, 236 S.W.3d at 799. Mistake of fact as defined in the Model Penal Code was applied to

transferred-intent situations but rejected in other respects.[15]  *Thompson* explained that the

portion of the Model Penal Code that broadly permitted a mistake of fact to negate "the

purpose, knowledge, belief, recklessness, or negligence required to establish a material

element of the offense" and that did not require a mistake be reasonable was rejected by the

drafters of the revised Texas Penal Code. *Id*. at 796.  Instead, the drafters suggested a

"proposed code [that] limited the mistake of fact defense to situations that negated the

culpable mental state required for the offense." *Id*. at 798.  Furthermore, "the drafters of the

proposed penal code viewed the mistake-of-fact defense as essentially redundant of the

---

[15]     The law on mistake of fact as it applies in the context of transferred intent is unaffected by this decision because of its different historical origins. In *Thompson*, the Court held that an instruction on mistake of fact is warranted when a jury may convict under a statutory provision that permits the transfer of a culpable mental state by providing that a person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that a different offense was committed. *Thompson v. State*, 236 S.W.3d 787, 800 (Tex. Crim. App. 2007); *see also Louis v. State*, 393 S.W.3d 246 (Tex. Crim. App. 2012). The mistake must be reasonable for it to constitute a circumstance that exculpates the defendant of the offense charged and the defendant would be guilty of any lesser-included offense that would be applicable if the facts were as the defendant believed. *Thompson*, 236 S.W.3d at 800. The Court determined that this portion of the current penal code stems from the Model Penal Code, which had stated, "'Although ignorance or mistake would otherwise afford a defense to the offense charged, the defense is not available if the defendant would be guilty of another offense had the situation been as he supposed.  In such case, however, the defendant's ignorance or mistake shall reduce the grade and degree of the offense of which he may be convicted to those of the offense of which he would be guilty had the situation been as he supposed.'" *Id*. at 796 (quoting MODEL PENAL CODE AND COMMENTARIES, § 2.04(1)(a) & (2), p. 267) (emphasis deleted). We have also determined that the failure to give a mistake-of-fact instruction can be harmful error in the context of a transferred-intent situation. *See Louis*, 393 S.W.3d at 254. In *Louis v. State*, we rejected the State's argument that the failure to submit a mistake-of-fact instruction "'that merely denied the charged offense' is never harmful." *Id.* We applied the "some harm" standard and explained that the "failure to instruct the jury on the defense of mistake of fact was an impediment to [Louis's] ability to present his defense that he did not have the requisite *mens rea* to be found guilty and to argue that defense to the jury." *Id*. We also noted that the "[l]ack of the requested instruction effectively prevented [Louis] from presenting his defense. . . ." *Id*.

requirement that the State prove the mental element of an offense, but they included the defense as a method of placing upon the defendant 'the burden of producing evidence' so that a mistake of fact is something 'the prosecution does not have to negate unless raised.'" *Id*. at 799. Today, we reaffirm our conclusion in *Thompson* that, in accordance with the intent of the drafters of the Texas Penal Code, an instruction on mistake of fact is limited to any culpable mental state required for the offense. *Id*. at 798.

**B. Abandoned Law Should Remain in the Distant Past**

Judge Cochran primarily relies on law that is over a century old to suggest that we should abandon our precedent of the last 30 years in favor of the law as it existed in the distant past. Her suggestion that mistake of fact should apply to additional elements beyond the defendant's culpable mental state would alter practically every offense in the Texas Penal Code in a way that has not been recognized in Texas for over 30 years. She describes her "practical test for whether a defendant is entitled to a mistake-of-fact defense" by asking, "If the facts were as the defendant mistakenly believed them, would he be innocent of the charged offense?" Under this interpretation, a jury would be instructed to acquit a defendant who had a reasonable but mistaken belief about any element in an offense, even those elements that do not require proof of a culpable mental state. Under this approach, if a defendant charged with aggravated robbery of a person 65 years of age or older produced evidence that he believed the person was 64 years of age, then the jurors would be instructed to acquit him of aggravated robbery if they believed he was reasonably mistaken as to that

fact. *See id.* § 29.03. Similarly, with respect to the statute defining the offense of felony murder, which dispenses with a culpable mental state, Judge Cochran's approach would have required acquittal if a defendant had a mistaken and reasonable belief that he was not committing an act clearly dangerous to human life. *See Lomax*, 233 S.W.3d at 304 (construing TEX. PENAL CODE § 19.02(b)(3)). Furthermore, with respect to the offense of child abandonment, the Court has held that there is no culpable mental state as to the surrounding-circumstances element, but Judge Cochran's approach would require acquittal if a defendant had a mistaken and reasonable belief about the surrounding circumstances. *See Schultz v. State,* 923 S.W.2d 1, 4 (Tex. Crim. App. 1996) (construing TEX. PENAL CODE § 22.041(b)). The examples are endless.

Perhaps there may be an instance in which a statute is unconstitutional as applied to a defendant because a jury is not permitted to consider his mistaken, reasonable belief about a matter, but that situation is not before us here: appellant has not challenged the constitutionality of this statute, and, as Judge Cochran agrees, these facts do not support his appellate claim pertaining to mistake of fact. *See Lambert v. California*, 355 U.S. 225, 229 (1957) (striking down registration ordinance that did not require proof of mental state of duty-to-register element as due-process violation). It would seem improvident to abandon this Court's decades-old precedent in the present case, in which no constitutional violation has been alleged and which presents no error in the trial court's failure to include an instruction on mistake of fact. We should not abandon precedent based on non-binding dicta. *See*

*Woolridge*, 827 S.W.2d at 905. Nothing in this case compels us to abandon the precedent of the past 30 years.

### C. Appellant Not Entitled to Mistake-of-Fact Instruction

Appellant's alleged mistaken belief was that he was licensed and in good standing to practice law in Mexico. We have determined, however, that the only culpable mental state set forth in the false-lawyer statute is intent to obtain an economic benefit. *See* TEX. PENAL CODE § 38.122(a). Because that statute does not require proof of a culpable mental state as to the licensing or good-standing elements, the mistake-of-fact instruction appellant sought did not negate the kind of culpability required for the offense. *See* TEX. PENAL CODE § 8.02(a); *Granger*, 3 S.W.3d at 41; *see also Murchison v. State*, 93 S.W.3d 239, 252 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (appellant not entitled to mistake-of-fact instruction because his alleged mistake did not negate culpability required by statute); *Gant v. State*, 814 S.W.2d 444, 453 (Tex. App.—Austin 1991, no pet.) (same). The court of appeals did not err, therefore, in upholding the trial court's denial of appellant's requested charge. *Celis*, 354 S.W.3d at 29. We overrule appellant's second issue.

### IV. Jury Instruction On "Foreign Legal Consultant"

In his third issue, appellant argues that the court of appeals erred in upholding the jury instruction that included "foreign legal consultant" as a definition of "good standing with the State Bar of Texas" under the false-lawyer statute. *Id*. at 31. He contends that this instruction constituted an improper comment on the weight of the evidence in violation of Texas Code

of Criminal Procedure Article 36.14. *See* TEX. CODE CRIM. PROC. art. 36.14 (prohibiting judicial comments on weight of evidence). He contended that the definition should be limited to the definition of "member in good standing with the State Bar of Texas" provided in the State Bar Rules. *See* TEX. STATE BAR RULES art. 1, § 6. Disagreeing, the court of appeals observed that the definition of "foreign legal consultant" is set forth in the Rules Governing Admission to the Bar of Texas, which the court held is the definition in the State Bar Rules for "good standing" as it applied to this case. *Celis*, 354 S.W.3d at 30-31 (citing RULES GOVERNING ADMISSION TO THE BAR OF TEX. Rule XIV). We agree.

### A. Law Applicable to Jury Instructions

The trial court must give the jury a written charge "setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." TEX. CODE CRIM. PROC. art. 36.14. We have held that, if a jury instruction is derived from the penal code, it is generally permitted because it is the applicable statute and, therefore, the "applicable law," as required by Article 36.14. *Kirsch*, 357 S.W.3d at 651.

Unless statutorily permitted, a trial court may not comment on the weight of the evidence. *Id.* at 651-52. Non-statutory instructions, even when they are neutral and relate to statutory offenses or defenses, generally have no place in the charge. *Id.* at 652.

More specifically, the trial court may instruct on the definition of certain terms but not others. It must instruct on statutorily defined terms as the law applicable to the case. *See* TEX. CODE CRIM. PROC. art. 36.14. By contrast, it is generally impermissible to instruct on terms not statutorily defined, and the trial court instead must permit the jury to construe them according to the rules of grammar and common usage. *See* TEX. GOV'T CODE § 311.011; *Kirsch*, 357 S.W.3d at 650. However, a trial court may define a statutorily undefined term that has an established legal definition or that has acquired a technical meaning that deviates from its meaning in common parlance. *See Medford v. State*, 13 S.W.3d 769, 771-72 (Tex. Crim. App. 2000) (proper to instruct jury on definition of "arrest" because it is "a technical term possessing a long, established history in the common law, and it would be inappropriate if jurors arbitrarily applied their personal definitions of arrest"); *see also* TEX. GOV'T CODE § 311.011(b) ("Words and phrases that have acquired a technical or particular meaning . . . shall be construed accordingly.").

Appellant correctly observes that the term "in good standing" is not defined in the false-lawyer statute. *See* TEX. PENAL CODE § 38.122. The trial court, therefore, should not have defined it in the jury charge unless it has an established legal definition or has acquired a technical meaning. *See Kirsch*, 357 S.W.3d at 650; *Medford*, 13 S.W.3d at 771-72. It has. The term "in good standing" is a technical term because it has "acquired a peculiar and appropriate meaning in the law" and may not be construed according to the traditional rules of grammar and common usage. *Medford*, 13 S.W.3d at 772. The instruction on the

definition of that term, therefore, was not a comment on the weight of the evidence. *See* TEX. CODE CRIM. PROC. art. 36.14.

Appellant, however, also challenges the accuracy of the definition provided by the jury instructions. Because the false-lawyer statute does not provide a definition of that term, we must look beyond that statute to determine whether the definition included in the charge was erroneous.

## B. Instructions Properly Defined Term

The trial court's charge instructed the jurors that they could find that appellant was in good standing under the statute if they found that he was "certified to practice in Texas as a Foreign Legal Consultant by the Texas Board of Law Examiners," which it defined as "someone certified under the Rules of the Supreme Court of Texas governing admission to the Bar of Texas, and who is considered a lawyer affiliated with the Bar of Texas." Appellant contends that this was error because it exceeded the definition of "a member in good standing" set forth in the State Bar Rules and, therefore, constituted a comment on the weight of the evidence. *See* TEX. STATE BAR RULES art. 1, § 6.

The definition in the State Bar Rules defines "member in good standing" as that term applies to people who are members of the State Bar of Texas, but this definition was inapplicable because appellant never claimed to be a member of the Texas Bar. The State Bar Rules define a "member in good standing" as "someone who meets and complies with all applicable requirements of the Rules of the Supreme Court of Texas governing admission

to the bar of Texas, and who is not in default of payment of dues and who is not under suspension from practice." *Id.* Because appellant does not contend that he is a member of the State Bar, the trial court correctly declined to limit its instruction to the definition of "a member in good standing."

Although appellant was not a member of the Texas Bar, he could practice law in Texas if, among other requirements, he was "in good standing with the State Bar of Texas." TEX. PENAL CODE § 38.122. In the Rules Governing Admission to the Bar of Texas, Rule XIV sets forth requirements for the practice of law in Texas by a person licensed in a foreign jurisdiction. *See* RULES GOVERNING ADMISSION TO THE BAR OF TEX. Rule XIV. That Rule indicates that the "Court may certify to practice in Texas as a legal consultant . . . a member in good standing of a recognized legal profession in a foreign country" and that such a person (1) "may render legal services in Texas in the manner and to the extent permitted by the jurisdiction in which such person is admitted to practice," and (2) is "considered a lawyer affiliated with the Bar of Texas . . . ." *Id.* at §§ 1(a), 3, 4. The Director of Eligibility and Examination for the Texas Board of Law Examiners testified that a person meeting this criteria was considered to be in good standing with the State Bar. Therefore, the instruction provided a legally correct definition of "good standing" under the Rules and, because raised by the evidence, was the law applicable to the case. *See id.*; TEX. CODE CRIM. PROC. art. 36.14.

We hold that the charge properly instructed the jury as to the "foreign legal consultant" criteria within the definition of "in good standing." In fact, because appellant claimed at trial that he believed he was licensed in Mexico and not that he believed he was licensed in Texas, this was the only way in which the jury could have found that he was "in good standing" under the statute. *See* TEX. PENAL CODE § 38.122. The court of appeals did not err, therefore, in upholding this instruction. *Celis*, 354 S.W.3d at 30-31. We overrule appellant's third issue.

## V. Conclusion

We conclude that appellant has failed to show error in the jury charge. We affirm the judgment of the court of appeals.


Delivered: May 15, 2013

Publish