

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00221-CR

_____

QUINCY ANDREA NEIGHBORS, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1725033

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

A jury convicted Appellant Quincy Andrea Neighbors of two counts of aggravated sexual assault of a child and one count of indecency with a child by sexual contact. *See* Tex. Penal Code Ann. §§ 21.11(d), 22.021(a)(2)(B). On appeal, Neighbors argues in two points that the trial court reversibly erred by (1) admitting evidence of his out-of-state convictions under Article 38.37 of the Texas Code of Criminal Procedure and (2) denying his request to include a mistake-of-fact instruction in the jury charge. We will affirm.

## I. BACKGROUND

After running away from her father's home in Dallas, twelve-year-old Chelsea[1] ended up at the bus and train station in downtown Fort Worth. She called her friend's dad and asked for a ride. After moving closer to the security office because a man had been following her, Chelsea sat on a bench and waited approximately three hours while continuing to text her friend about a ride.

While she was waiting, Neighbors, who was employed as a station security guard, approached her and asked if she had a ride coming. When Chelsea responded "yes," Neighbors instructed her to move over by the Greyhound bus station to wait, and she complied. A little while later, Neighbors called to Chelsea from the door of the Greyhound bus station's waiting room, gave her his keys, and told her to wait in

---

[1]We use an alias to refer to the complainant. *See* Tex. R. App. P. 9.10(a)(3).

his vehicle because he was going to give her a ride home. Again, Chelsea did as Neighbors instructed and waited in the driver's seat of his vehicle for about an hour.

When Neighbors reappeared, he told Chelsea to move over to the passenger seat and proceeded to slap her on the butt as she did so. Then, instead of driving Chelsea home, he drove to a park and parked behind a sign. Neighbors then pulled Chelsea's shirt down and began touching her breasts. He then ran his hand all the way down to her vaginal area. Chelsea told Neighbors that she was only twelve years old, but he did not respond and continued to grope her. Neighbors then moved to the backseat, continued to grab Chelsea, and told her to get into the backseat with him because "he wasn't going to give [her] a free ride" and she "was going to have to pay up."

Despite Chelsea's efforts to resist, Neighbors was eventually able to pull her into the backseat with him. By the time Chelsea was in the backseat, Neighbors already had his pants down, and he began pulling her pants down as well. Neighbors grabbed Chelsea by the waist, touched her genitals with his hands, and made comments about what a nice body she had. Then, while positioned behind Chelsea, Neighbors proceeded to insert his penis into her vagina and her anus. Both of these insertions caused Chelsea pain. The attack stopped after about twenty minutes because Neighbors had to return to work soon at the Greyhound station.

Chelsea put her clothes back on and returned to the vehicle's front passenger seat. Neighbors then drove to his house and went inside to eat dinner with his wife.

3

Chelsea testified that even though she had been left alone in Neighbors's vehicle, she could not escape because the passenger door's broken handle made it impossible for her to open it from the inside. A short time later, Neighbors returned to the vehicle and drove to a gas station where he filled up on gas and bought some snacks and drinks. He then drove back to the Greyhound station. When they arrived back at the station, Neighbors instructed Chelsea to wait in his vehicle until his shift was over and told her that he would drive her home at that time.

After Neighbors went back to work, Chelsea texted her friend in Dallas to tell her what had happened and to ask her if she could come pick her up. Eventually, Chelsea's friend and her friend's aunts arrived, and one of the aunts confronted Neighbors. Neighbors then opened the door to his vehicle. Chelsea jumped out and ran to her friend's aunt's vehicle.

The next day, Fort Worth police were contacted, and Neighbors was arrested. During his interview with Detective Richard Hoeppner, Neighbors admitted that he had put his penis in Chelsea's vagina, that he had touched her breasts, and that he had contacted her anus with his penis.[2]

---

[2]According to Detective Hoeppner, Neighbors explained to him during his interview that "he [had] put[] it in the wrong hole" because he had been nervous during his attack on Chelsea.

The Tarrant County Medical Examiner's Office conducted DNA tests on breast, vulvar, and perianal swabs taken from Chelsea. Neighbors's DNA was found on all of these swabs.[3]

Neighbors was indicted on two counts of aggravated sexual assault of a child and one count of indecency with a child by sexual contact. The indictment also included a repeat-sex-offender allegation. A trial was held in August 2023. The jury found Neighbors guilty of all three counts, found the repeat-sex-offender allegation "true," and assessed his punishment at life in prison on each count. The trial court sentenced him accordingly. This appeal followed.

## II. DISCUSSION

### A. Point One: Admission of Prior Out-of-State Convictions

In his first point, Neighbors complains that the trial court reversibly erred by admitting evidence of his prior out-of-state convictions for child-sex offenses under Article 38.37 of the Texas Code of Criminal Procedure. We disagree.

#### 1. Relevant Background

The trial court held two hearings outside the jury's presence regarding the admission under Article 38.37[4] of State's Exhibits 32 and 33—court records

---

[3]The DNA profile obtained from the breast swab was a mixture of at least three individuals, but testing determined that the "significant profile" originated from Neighbors.

[4]Article 38.37 provides, in relevant part, that

5

documenting two of Neighbors's prior convictions in Louisiana for child-sex offenses. Neighbors objected to the admission of this evidence on the grounds that Article 38.37 applies solely to Texas offenses and does not authorize the admission of evidence concerning prior out-of-state offenses. The trial court overruled Neighbors's objection and granted him a running objection throughout the trial's guilt–innocence phase.

At trial, after calling a fingerprint expert to confirm that the fingerprints on Exhibits 32 and 33 matched a sample taken from Neighbors, the State read these exhibits to the jury. The State also called the victim of one of Neighbors's Louisiana offenses to testify.[5]

---

[n]otwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

Tex. Code Crim. Proc. Ann. art. 38.37, § 2(b). Neighbors's charged offenses— aggravated sexual assault of a child and indecency with a child—are among those described by Subsection (a)(1). *See id.* art. 38.37, § 2(a)(1)(C), (E).

[5]The trial court held another hearing outside the jury's presence when the State called the prior victim to testify. At the close of that hearing, Neighbors raised the same Article 38.37 objection to the prior victim's testimony that he had raised to State's Exhibits 32 and 33.

## 2. Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990). Thus, we will not reverse such a decision unless the record shows a clear abuse of discretion. *Zuliani*, 97 S.W.3d at 595. An abuse of discretion occurs only when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id.*

Even if a trial court improperly admits evidence, such an error generally does not warrant reversal unless it affects an appellant's substantial rights. *See* Tex. R. App. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). Improperly admitted evidence that did not influence the jury or had but a slight effect on the verdict is harmless. *Id.*

In analyzing harm, we consider, among other things, "(1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence supporting the verdict; and (4) whether the State emphasized the error." *Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021); *see Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018) (similar); *Haley v. State*, 173 S.W.3d 510, 518–19 (Tex. Crim. App. 2005) (listing considerations in harm analysis, including

7

"any testimony or physical evidence . . . , the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, . . . . the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire and whether the State emphasized the error"). "If we have a fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but a slight effect, we will not overturn the conviction." *Gonzalez*, 544 S.W.3d at 373.

### 3. Analysis

Neighbors's complaint that the trial court reversibly erred by admitting evidence of his out-of-state convictions is premised on his contention that Article 38.37 authorizes only the admission of a defendant's prior Texas offenses, not those committed in other jurisdictions. But in the present case, we need not address whether Article 38.37 allows the admission of out-of-state convictions because even if we were to assume—without deciding—that it does not, the record does not establish harm.

Here, the evidence of Neighbors's guilt was overwhelming.[6] Chelsea testified at length and provided the jury a detailed account of how Neighbors had assaulted

---

[6]Neighbors claims that the fact that the jury took only 15 minutes to convict him shows that the admission of his out-of-state convictions poisoned the jury against him and prevented the jurors from giving him the benefit of the doubt in their deliberations. However, we believe that the jury's quick decision is better explained by the compelling evidence of Neighbors's guilt. *Cf. Anthony v. State*, No. C14-91-00927-CR, 1993 WL 406734, at *5 (Tex. App.—Houston [14th Dist.] Oct. 14, 1993,

8

her. Four additional witnesses confirmed that Chelsea had described the sexual assault to them within a day after it occurred. The SANE[7] nurse who examined Chelsea the day after the assault described Chelsea's numerous injuries, which she noted were among the most extensive that she had observed during her ten-plus years of conducting examinations. Further, the State presented evidence that Neighbors's DNA had been found in Chelsea's vulvar, perianal, and breast areas.

In addition, as Neighbors acknowledges in his briefing, "the State was able to use [his] very own words in support of the conviction." During his interview with Fort Worth police, Neighbors admitted to having sex with Chelsea by penetrating her vagina, to touching her breasts, and to contacting her anus with his penis.

Further, although the State mentioned Neighbors's prior convictions during its closing argument, it did not overly emphasize them. Indeed, the State's closing argument takes up approximately 194 lines of the reporter's record, but the prior convictions are referenced in only 11 of them. Thus, this factor weighs only slightly, if at all, in favor of harm. *Cf. McKinney v. State*, No. 07-12-0206-CR, 2013 WL 530955, at *2 (Tex. App.—Amarillo Feb. 13, 2013, no pet.) (per curiam) (mem. op., not

---

pet. ref'd) (op. on remand, not designated for publication) (rejecting appellant's argument that jury's "speedy" deliberation suggested "that the jury was inflamed and rushed to a verdict" and concluding that the jury's relatively quick decision "was almost certainly due to the damning array of . . . evidence").

[7]SANE stands for Sexual Assault Nurse Examiner. *Lumsden v. State*, 564 S.W.3d 858, 868 (Tex. App.—Fort Worth 2018, pet. ref'd).

designated for publication) (concluding that error in admission of evidence was harmless because, inter alia, the prosecutor did not "overly emphasize" the evidence during closing arguments, mentioning it only twice).

Given the strength of the State's evidence against Neighbors—including his admission to police that he had sexually assaulted Chelsea—and the relative lack of emphasis placed on his prior out-of-state convictions, we conclude that, in the context of the entire case against Neighbors, any error in the admission of these prior convictions did not have a substantial or injurious effect on the jury's verdict and did not affect his substantial rights. *See Macedo*, 629 S.W.3d at 240; *Haley*, 173 S.W.3d at 518; *Baxter v. State*, No. 02-22-00258-CR, 2023 WL 8268292, at *13 (Tex. App.—Fort Worth Nov. 30, 2023, pet. ref'd) (mem. op., not designated for publication); *see also Garcia v. State*, 201 S.W.3d 695, 704 (Tex. Crim. App. 2006) ("[T]here is no reason for us to believe that the jury had reasonable doubt that [the defendant] murdered [the victim] but convicted him anyway based on the [extraneous-offense] evidence."). Thus, we must disregard any such error. *See* Tex. R. App. P. 44.2(b). We overrule Neighbors's first point.

## B. Point Two: Refusal to Give Mistake-of-Fact Instruction

In his second point, Neighbors asserts that the trial court reversibly erred by denying his request to include a mistake-of-fact instruction regarding Count Two in the jury charge. We disagree.

10

### 1. Relevant Background

During the guilt–innocence phase's charge conference, Neighbors requested a mistake-of-fact instruction as to Count Two (which alleged that he had sexually assaulted Chelsea by contacting her anus with his sexual organ). He argued that he was entitled to this instruction based on the following statements that he made during his interview with Detective Hoeppner:

> Hoeppner: How was she positioned in the backseat?
>
> Neighbors: She was just bent over, 'cause we really couldn't do nothin' in the backseat, and I was on a time limit. And that was it.
>
> Hoeppner: Was she bent over as in "doggie style?"
>
> Neighbors: Yeah.
>
> Hoeppner: Ok. Did you ever put it in her butt?
>
> Neighbors: No, I just . . . kept on . . . I couldn't get it, you know, I guess 'cause I was nervous, you know what I'm sayin'? And after that we, we did it, and we both got in the front seat. I kept on, I couldn't find it, and she kept saying "you keep on, you keep on getting the wrong hole." But I never got it in that hole cause . . . I was . . . you know what I'm sayin' . . . she kept on . . . then I finally got it in.

According to Neighbors, these statements entitled him to a mistake-of-fact instruction on Count Two because they showed that he had accidentally contacted Chelsea's anus while attempting to have vaginal intercourse with her. The trial court, noting that Neighbors's statements did not show that his attempt to insert his penis into Chelsea's vagina was a mistake, rejected this novel theory and refused to include Neighbors's requested mistake-of-fact instruction in the jury charge.

11

## 2. Applicable Law and Standard of Review

A trial court must submit a charge to the jury that sets forth the law applicable to the case. Tex. Code Crim. Proc. Ann. art. 36.14; *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998). Upon timely request, an accused is entitled to a defensive instruction on every issue raised by the evidence, even if the evidence is weak or contradicted and even if the trial court views it as uncredible. *See Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007); *Golden v. State*, 851 S.W.2d 291, 295 (Tex. Crim. App. 1993); *Warren v. State*, 565 S.W.2d 931, 933–34 (Tex. Crim. App. [Panel Op.] 1978); *see also* Tex. Penal Code Ann. § 2.03(c). "[A] defense is supported (or 'raised') if there is evidence in the record making a prima facie case for the defense." *Shaw*, 243 S.W.3d at 657. In other words, a defendant is entitled to an instruction on a defense "if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true." *Id.* at 657–58.

In determining whether a defense is supported by evidence, "a court must rely on its own judgment, formed in the light of its own common sense and experience, as to the limits of rational inference from the facts proven." *Id.* at 658. We review a trial court's determination as to whether a defense is supported by the evidence as a question of law. *See id.*

Mistake of fact is a defense to prosecution if "the actor through mistake formed a reasonable belief about a matter of fact" and "his mistaken belief negated

12

the kind of culpability required for commission of the offense." Tex. Penal Code Ann. § 8.02(a). Under the statute, "kind of culpability" refers to the culpable mental state needed for someone to be held criminally responsible for the charged offense. *See Beggs v. State*, 597 S.W.2d 375, 378 (Tex. Crim. App. 1980); *see also Celis v. State*, 416 S.W.3d 419, 430–31 (Tex. Crim. App. 2013).

Thus, when a defendant "raises evidence of a mistaken belief as to the culpable mental state of the [charged] offense," he "is entitled to an instruction on mistake of fact upon request." *Celis*, 416 S.W.3d at 430 (first citing *Beggs*, 597 S.W.2d at 378; then citing *Granger v. State*, 3 S.W.3d 36, 41 (Tex. Crim. App. 1999); and then citing *Giesberg v. State*, 984 S.W.2d 245, 246 (Tex. Crim. App. 1998)). But if the evidence, when viewed in the light most favorable to the defendant, does not establish a mistake-of-fact defense, an instruction is not required, and the trial court does not err by refusing such a request. *See Bottoms v. State*, No. 02-07-178-CR, 2008 WL 467335, at *4 (Tex. App.—Fort Worth Feb. 21, 2008, no pet.) (mem. op., not designated for publication) (first citing *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993); and then citing *Hudson v. State*, 145 S.W.3d 323, 325 (Tex. App.—Fort Worth 2004, pet. ref'd)).

### 3. Analysis

Here, because Neighbors's statements during his interview with Detective Hoeppner—even when viewed in the light most favorable to Neighbors—did not negate the culpable mental state needed to convict him for Count Two, he was not entitled to a mistake-of-fact instruction. *See Bottoms*, 2008 WL 467335, at *4; *see also*

13

Tex. Penal Code Ann. § 8.02(a).

Count Two of the indictment alleged that Neighbors "intentionally or knowingly cause[d]" his "sexual organ . . . to contact the anus of [Chelsea]," who "was younger than 14 years of age at the time of the offense." *See* Tex. Penal Code Ann. § 22.021(a)(1)(B)(iv), (a)(2)(B) (providing that a person commits aggravated sexual assault of a child if the person "intentionally or knowingly . . . causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor" and if "the victim is younger than 14 years of age"). Thus, the culpable mental state for Count Two is "intentionally or knowingly." *See id.* § 22.021(a)(1)(B). Aggravated sexual assault "is a conduct-oriented offense." *Vick v. State*, 991 S.W.2d 830, 832 (Tex. Crim. App. 1999); *see also Gonzales v. State*, 304 S.W.3d 838, 848 (Tex. Crim. App. 2010). "A person acts intentionally . . . with respect to the nature of his conduct . . . when it is his conscious objective or desire to engage in the conduct . . . ." Tex. Penal Code Ann. § 6.03(a). "A person acts knowingly . . . with respect to the nature of his conduct . . . when he is aware of the nature of his conduct . . . ." Tex. Penal Code Ann. § 6.03(b).

Neighbors claims that he told Detective Hoeppner during his recorded interview that "he accidentally made contact with [Chelsea's] anus while he was intending to make contact with her vagina." But that is not what Neighbors said. Neighbors's statement that "[he] never got it in that hole" was made in response to Detective Hoeppner's question asking specifically about anal *penetration*—not *contact*.

14

Thus, at best, this statement is evidence that Neighbors did not intentionally penetrate Chelsea's anus with his sexual organ. But such evidence is not sufficient to negate the culpable mental state required to convict Neighbors of Count Two, which alleged that he had "intentionally *or knowingly*" caused his sexual organ "to *contact*" Chelsea's anus. [Emphasis added.] Indeed, because Neighbors's interview statements show that he—at the very least—was aware that he was contacting Chelsea's anus while repeatedly attempting to penetrate her vagina, they are evidence that he contacted her anus knowingly. *See* Tex. Penal Code Ann. § 6.03(b).

Because Neighbors's interview statements did not negate the kind of culpability required to convict him of Count Two, the trial court did not err by refusing to include his requested mistake-of-fact instruction in the jury charge. *See Bottoms*, 2008 WL 467335, at *4; *see also* Tex. Penal Code Ann. § 8.02(a). Accordingly, we overrule Neighbors's second point.

### III. Conclusion

Having overruled both of Neighbors's points, we affirm the trial court's judgment.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 1, 2024

15