**Opinion issued December 19, 2013**



In The

# Court of Appeals

**For The**

# First District of Texas

————————————

**NO. 01-12-00522-CR**

————————————

**DONNA RENEE THOMAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 263rd District Court**
**Harris County, Texas**
**Trial Court Case No. 134460001010**

---

**MEMORANDUM OPINION**

A jury convicted appellant Donna Renee Thomas of capital murder and found that she used a deadly weapon in the commission of the crime. TEX. PENAL CODE ANN. § 19.03 (West 2012). The trial court sentenced her to life in prison without parole. *See id*. § 12.31. In five issues, Thomas challenges the sufficiency

of the evidence, the charge to the jury, and the constitutionality of Penal Code section 12.31, which required her mandatory life sentence without parole. We affirm.

## Background

In August 2008, William Jones, the complainant, was shot and killed at the home of Marcus Smith. Appellant Donna Thomas was not physically present in the house at the time of the shooting, but she was waiting in a car outside. Accordingly, at trial the State argued that Thomas was a party to the charged offense of capital murder.

Thomas's involvement in the shooting arose from her acquaintance with Reginald Price, a visitor to Houston. He asked Thomas if she knew where to purchase Xanax. Thomas called her friend, Desiree Jarmon, asking if she could help to arrange a purchase of 1,500 Xanax pills. Jarmon indicated that she knew someone named "Hop" who could help, and they were put in contact that day. Thomas testified that Price gave her money for the Xanax and waited in the car while she met with Hop at a convenience store. Thomas further testified that Hop disappeared with the money and never returned with the pills.

Following the meeting, Thomas called Jarmon to tell her that Hop had stolen Price's money. Jarmon agreed to come to Thomas's house. Jarmon repeatedly called Hop but was unable to contact him. Jarmon arrived at the house to find

2

Thomas with Price, his cousin Jacoby Hall, and Thomas's sister, Danyell. Price put a revolver in Jarmon's face and demanded that she show him where Hop spent his time. Thomas did not protest Price's conduct, but instead began striking Jarmon repeatedly in the back of the head with an unknown object. This attack commenced without any provocation from the others, leaving Jarmon bruised and bloodied. Afterward, Thomas brought Jarmon a new shirt to replace her bloodied one. Jarmon felt that Thomas was acting on her own and was not taking orders from Price.

Jarmon drove the entire group to several locations looking for Hop. At each stop, the men got out, brandishing at least one gun. Jarmon observed them kick doors open. This search continued the following day, when the same group and Jarmon's brother met up with a woman named Kindra Trotter who claimed to know Hop. After meeting Trotter, the group let the Jarmons leave. The others, including Thomas, returned to Trotter's home that night with a gun and forced Trotter and her boyfriend into the car.

Price believed that Hop frequented the home of Marcus Smith, and Trotter guided them there. At Smith's home, Hall and Price got out of the car; Danyell drove Thomas and the others to a nearby gas station. Thomas and Danyell dropped Trotter's boyfriend off at his home before returning to Smith's home with Trotter.

Trotter testified that she tried and begged to leave but that Thomas and Danyell would not release her from the car.

Hall and Price forced their way into the home and forced Smith onto the floor. They asked where to find Hop. One of the two carried a revolver, and the other carried a semiautomatic handgun. The men displayed the guns the entire time that they interacted with Smith, who did not feel free to leave. The men ordered Smith to call his friend, William "Boo" Jones, the complainant, who they believed had been with Hop that day. When Jones knocked on the door, he was greeted at gunpoint and was forced into the house. At one point, Price became so frustrated with Jones that he fired a shot with the semiautomatic pistol to scare him.

After Jones had been forced into the house, Charles Patterson knocked on the door, unaware of what had taken place. Patterson had come to visit Smith. Price and Hall had him come in and drew their guns, making him feel unable to leave. At one point, Price walked by Jones, who jumped up and grabbed him. Jones nearly managed to wrestle the gun away from Price, but Hall ran over to help and recovered the gun. Hall pointed a pistol at Patterson. Jones slipped and fell onto the floor, and Price began shooting him. Patterson observed at least one bullet strike Jones, and then Hall shot him as well. After the shooting stopped,

4

Jones spoke but was unable to get up. He was turning purple and bleeding profusely.

Meanwhile, Thomas, Danyell, and Trotter had parked outside of Smith's home. The group heard approximately three gunshots. Trotter testified that Thomas and Danyell did not seem surprised or bothered by the sound of the gunshots. Thomas then entered the house. Trotter observed Thomas wipe off the doorknob with her wig before entering. Patterson heard the intruders discuss taking him somewhere, along with Jones and Smith. After the three men refused to go, Thomas responded, "Just kill all of 'em." Patterson believed that Thomas was giving orders.

Trotter testified that Thomas returned to the car less than ten minutes later with Price and Hall. Price had phones and identification cards that he claimed to have taken from the people in the house. Trotter testified that when they dropped her off, Price told her, "Don't say nothing," or else the same would happen to her. Trotter testified that it was her impression that Thomas was acting of her own accord and was never threatened or ordered to do anything by Hall or Price.

Thomas was convicted of capital murder. *See* TEX. PENAL CODE § 19.03. The jury was instructed on two theories of liability for the conduct of others: an aiding and abetting theory and a conspiracy theory. *See id.* § 7.02 (West 2011).

5

Because the State did not pursue the death penalty, the trial judge was required to assess the penalty at imprisonment for life without parole. *See id.* § 12.31(a).

## Analysis

### I. Jury charge

In her first issue, Thomas argues that the instruction provided to the jury regarding the law of parties erroneously lowered the State's burden of proof with respect to the mens rea required for the offense, and thereby caused her egregious harm.

The trial court is required to give the jury "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007); *see, e.g.*, *Celis v. State*, No. PD-1584-11, 2013 WL 2373114, at *3 (Tex. Crim. App. May 15, 2013). "Appellate review of claims of jury-charge error involves a determination of whether the charge is erroneous and, if it is, a harm analysis." *Celis*, 2013 WL 2373114, at *3. To determine whether there was error in the charge, we consider it "as a whole instead of a series of isolated and unrelated statements." *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995).

The first sentence of the charge informed the jury: "The defendant, Donna Renee Thomas, stands charged by indictment with the offense of capital murder, alleged to have been committed on or about the 16th day of August, 2008, in

6

Harris County, Texas." The charge defined capital murder as an offense committed if a person "intentionally commits murder, as hereinbefore defined, in the course of committing or attempting to commit the offense of burglary of a building or the offense of kidnapping."

The abstract instruction concerning the law of parties, which Thomas does not challenge on appeal, instructed the jury that:

> Before you would be warranted in finding the defendant guilty of capital murder, you must find from the evidence beyond a reasonable doubt not only that on the occasion in question the defendant was in the course of committing or attempting to commit the felony offense of burglary of a building owned by Marcus Smith, as alleged in this charge, *but also that the defendant specifically intended to cause·the death of William Jones, by shooting William Jones, with a deadly weapon, namely, a firearm*; [¶]

> or you must find from the evidence beyond a reasonable doubt that the defendant, Donna Renee Thomas, with the intent to promote or assist in the commission of the offense of burglary of a building, if any, solicited, encouraged, directed, aided, or attempted to aid Reginald Price and/or Jacoby Hall and/or Danyell Thomas in shooting William Jones, if she did, *with the intention of thereby killing William Jones*; [¶]

> or you must find from the evidence beyond a reasonable doubt that on the occasion in question the defendant, Donna Renee Thomas, entered into an agreement with Reginald Price and/or Jacoby Hall and/or Danyell Thomas to commit the felony offense of burglary of a building owned by Marcus Smith, as alleged in this charge, and pursuant to that agreement they did carry out their conspiracy, and while in the course of committing said conspiracy, Reginald Price and/or Jacoby Hall and/or Danyell Thomas *intentionally caused the death of William Jones by shooting William Jones with a deadly weapon, namely, a firearm*, and the murder of William Jones was committed in furtherance of the conspiracy and was an offense that

7

should have been anticipated by the defendant as a result of carrying out the conspiracy . . . .

(Emphasis and internal paragraph breaks supplied.)

On appeal Thomas challenges the application paragraphs of the jury instruction, which directed the jury to convict Thomas for capital murder in the following circumstances:

> If you find from the evidence beyond a reasonable doubt that on or about the 16th day of August, 2008, in Harris County, Texas, Reginald Price and/or Jacoby Hall and/or Danyell Thomas, did then and there unlawfully, while in the course of committing or attempting to commit the burglary of a building owned by Marcus Smith, intentionally cause the death of William Jones by shooting William Jones with a deadly weapon, namely, a firearm, and that the defendant, Donna Renee Thomas *with the intent to promote or assist the commission of the offense*, if any, solicited, encouraged, directed, aided or attempted to aid Reginald Price and/or Jacoby Hall and/or Danyell Thomas *to commit the offense*, if she did; or . . . .

(Emphasis supplied.) Several iterations of this paragraph followed in which the crime of kidnapping was substituted for that of burglary and various alleged kidnapping victims were introduced. Thomas contends that the meaning of "the offense" in these paragraphs is unclear and that these paragraphs authorized the jury to convict her of capital murder if it found that, with the intent to promote or assist in the commission of burglary or kidnapping, Thomas solicited, encouraged, directed, aided, or attempted to aid Price, Hall, or Danyell Thomas to commit that "offense." Thomas argues that this jury instruction was erroneous and caused her egregious harm.

8

Thomas thus contends that the challenged application paragraphs could be read to authorize the jury to convict her of capital murder if it found that she solicited, encouraged, directed, aided, or attempted to aid in the commission of a kidnapping or burglary, with the intent merely to promote or assist a kidnapping or burglary, and without requiring the intent to facilitate murder. This court addressed a similar challenge to a nearly identical jury instruction in *Holford v. State*, 177 S.W.3d 454 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). *Holford* was a capital murder case that involved application paragraphs concerning the law of parties. 177 S.W.3d at 460. As in this case, the appellant in *Holford* contended the application paragraphs were ambiguous on the theory that their wording—references to "intent to promote or assist the commission of the offense"—permitted a capital murder conviction if the appellant merely intended to aid in the commission of a lesser felony, as opposed to the required intent to aid in murder. *Id*. The charge in this case described the charged offense of capital murder as necessarily occurring "in the course of committing or attempting to commit the offense of burglary of a building or the offense of kidnapping," and likewise the charge in *Holford* described capital murder for that case as "necessarily occurring 'while in the course of committing or attempting to commit the robbery.'" *Id*. at 461.

9

*Holford* concluded that "[r]ead logically, the prepositional phrase 'with the intent to promote or assist the commission of the offense' refers to [the complainant's] murder, that occurred 'while in the course of committing or attempting to commit the robbery,'" and that "[l]ikewise, the clause 'solicited, encouraged, directed, aided or attempted to aid [another] to commit the offense' refers to [the complainant's] murder." *Id.* The same logic applies to this case. We conclude there was no ambiguity in the charge, and therefore there was no error. *See id.* at 465; *see also Reyes v. State*, 741 S.W.2d 414, 423–24 (Tex. Crim. App. 1987) (rejecting challenge to jury charge when abstract section included an application of law to the parties in the case); *Green v. State*, 233 S.W.3d 72, 80 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (differentiating *Reyes* from an instruction found egregiously harmful because the charge in *Reyes* included an application of law to the named parties in the abstract section).

Moreover, even if the charge were erroneous, the information presented to the jury in this case, viewed in its entirety, establishes there was no egregious error. In the absence of an objection at trial, we will reverse a judgment of conviction for charge error "only if the error was so egregiously harmful that 'he has not had a fair and impartial trial.'" *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). "Any harm that is inflicted by an erroneous charge must be assessed in light of (1) the entire jury charge, (2) the state of the evidence, (3) the argument of

10

counsel, and (4) any other relevant information revealed by the record of the trial as a whole." *Smith v. State*, 340 S.W.3d 41, 51 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Almanza*, 686 S.W.2d at 171). Jury charge error is egregiously harmful if "it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007). We engage in this assessment of the record as a whole to determine the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174. Egregious harm is a difficult standard to satisfy and must be determined through a case-by-case analysis. *Smith*, 340 S.W.3d at 51.

While we have found no error in the charge as given, *see Holford*, 177 S.W.3d at 465, even considering that charge as a whole and assuming error in the challenged paragraphs, at worst that error was an ambiguity, as opposed to an affirmatively incorrect or misleading instruction. *Cf. Green*, 233 S.W.3d at 82–84 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (refusing to forgive instructions that "affirmatively misled the jury"). Moreover, a reading of the challenged language in the context of the entire charge amply demonstrates that the reference to "the offense" is a reference to the charged offense of capital murder, and not any other uncharged "offenses" such as burglary or kidnapping. The jury charge as a whole communicated that the jury was required to find that Thomas had a specific

11

intent to kill Jones in order to convict her of capital murder under an aiding and abetting or solicitation theory.

Thus, the definite and correct statement of law in the abstract section precluded any egregious harm from resulting from the later application paragraphs that lacked the same degree of clarity. *See Holford*, 177 S.W.3d at 461. In sum, the jury was provided with sufficient information in the paragraphs prior to the application portion of the charge to understand what "the offense" was. *See Smith*, 340 S.W.3d at 51 (holding that although the application portion of the jury instructions did not specifically require that the two acts of sexual abuse occur during a period at least 30 days in duration, the general instructions, which preceded the application paragraph, clearly established that requirement).

The evidence at trial was primarily concerned with the offense of murder and not kidnapping or burglary. This further substantiates the notion that despite any ambiguity that may be read into isolated references to "the offense" in the charge, the jury was on alert that "the offense" at issue was capital murder and not the underlying felony of kidnapping or burglary.

With respect to the arguments of counsel, we first note that in voir dire the State correctly identified the specific intent to kill as a necessary element of capital murder, albeit not in the precise context of the law of parties. *See Smith*, 340 S.W.3d at 52–53 (noting that although the application portion of the jury

12

instructions did not specifically require that the two acts of sexual abuse occur during a period at least 30 days in duration, the State explained the required durational element while addressing the potential jurors during voir dire).  During the State's closing argument, the prosecutor again correctly acknowledged the need for specific intent in order to find Thomas guilty of capital murder, unless convicted under a conspiracy theory.  *See Smith* 340 S.W.3d at at 51–52 (explaining that although the application portion of the jury instructions did not specifically require that the two acts of sexual abuse occur during a period at least 30 days in duration, the State clearly explained the requisite durational element of the offense in its closing argument); *Holford*, 177 S.W.3d at 461 (pointing out that both prosecutor and defense attorney argued to jury that intent to kill victim was necessary for capital murder conviction).

On appeal Thomas places great weight on a misstatement of the law during the course of the State's discussion of the language of the charge, in which the prosecutor stated:

> And then immediately into it there's an "or" and then it goes into the definition of parties for burglary of a building.  That would be Jacoby Hall or Reginald Price or Danyell Thomas, I guess, intended to kill William Jones and that Donna Thomas encouraged, aided, directed or attempted to aid them with the intent or promote the assistance of killing *or burglary*.  And that is, one of the other people did it, they wanted to kill him, she wanted him dead and they were all doing it in the course of committing a burglary. That's parties and it's right here in there.

13

(Emphasis supplied.) The prosecutor thus referred to intent to commit a killing "or burglary." However, to the extent this explanation misstated the law, in her next sentence the prosecutor correctly explained that this is a matter of "she [Thomas] want[ing] him dead." The State later repeated that the proper emphasis remained on intent to kill: "Capital murder requires that I meant to kill you and I killed you. I really wanted you dead while I was committing another felony." The defense further reinforced the correct explanation of the charge in its closing statement by also explaining that capital murder is about specific intent to kill.

Thus, even assuming that the application instruction erroneously failed to expressly define "the offense," we nevertheless conclude that Thomas was not egregiously harmed by any such error. The jury instructions examined in their entirety reasonably informed the jury that it was required to find that Thomas had specific intent to kill Jones or to aid and abet in killing Jones in order to convict her of capital murder. The evidence indicated that "the offense" in question was a criminal homicide and not the act of kidnapping or burglary. Moreover, the State's voir dire and closing argument informed the jury of the need for specific intent in order to find Thomas guilty of capital murder unless convicted under a conspiracy theory. We thus hold that the jury instruction did not egregiously harm appellant. *See Bazanes v. State*, 310 S.W.3d 32, 37 (Tex. App.—Fort Worth 2010, pet. ref'd) (erroneous application paragraph that omits essential element of offense did not

14

constitute egregious harm when abstract portion set forth essential element, sufficient evidence existed to show essential element, and jury was not misled by arguments of counsel but was repeatedly and correctly advised that State had to prove essential element); *Holford*, 177 S.W.3d at 461 (holding that capital murder instruction substantially identical in form was not ambiguous and that, assuming it were ambiguous, any error did not cause egregious harm in light of argument of counsel and pellucid application of law in abstract section). Accordingly, we overrule Thomas's first issue.

## II. Sufficiency of the evidence

Thomas raises two challenges to the legal sufficiency of the evidence to support her conviction. When evaluating the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). The fact-finder is the exclusive judge of the witnesses' credibility and the weight to be given to their testimony. *Jones v. State,* 944 S.W.2d 642, 647–48 (Tex. Crim. App. 1996).

### A. Intent to kill

In her second point of error, Thomas contests the legal sufficiency of the evidence to prove that she intentionally caused Jones's death. A person is

criminally responsible as a party if "acting with intent to promote or assist in the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX. PENAL CODE § 7.02(a)(2). Thomas contends that the evidence is insufficient to establish that she, with the intent to promote or assist in the murder of William Jones, encouraged or aided or attempted to aid Price or Hall in committing the murder.

The jury could have found Thomas guilty of capital murder by concluding that either: (1) under Penal Code section 7.02(a), acting with intent to promote or assist the commission of the murder, Thomas solicited, encouraged, directed, aided, or attempted to aid another person to commit the murder; or (2) under section 7.02(b), the murder was committed in an attempt to carry out a conspiracy to commit a felony, and, though Thomas had no intent to commit the murder, it was committed in furtherance of the unlawful purpose and should have been anticipated as a result of the execution of the conspiracy. This court has previously held that a defendant in a capital murder case may be convicted solely on a conspiracy theory of culpability contained in the jury charge. *Love v. State*, 199 S.W.3d 447, 452 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (citing *Fuller v. State*, 827 S.W.2d 919, 932–33 (Tex. Crim. App. 1992)). "A defendant may be convicted of capital murder under § 7.02(b) without having the intent or actual anticipation that a human life would be taken that is required for an affirmative

16

answer to the anti-parties issue." *Valle v. State*, 109 S.W.3d 500, 503–04 (Tex. Crim. App. 2003).

Although Thomas contends that she could not have anticipated the murder would occur, this court considered a similar claim in *Love v. State*, 199 S.W.3d 447 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). In *Love*, the court found the evidence sufficient to satisfy section 7.02(b), specifically, that the defendant should have anticipated the possibility of a murder occurring during the course of a robbery in light of the fact that the defendant was aware that his co-conspirators had guns. 199 S.W.3d at 453–54; *see also Green v. State*, 682 S.W.2d 271, 285–86 (Tex. Crim. App. 1984) (holding that murder should have been reasonably anticipated as a possible result of robbery when appellant admitted to entering a house armed with a gun); *Ruiz v. State*, 579 S.W.2d 206, 209 (Tex. Crim. App. [Panel Op.] 1979) (holding that direct evidence of appellant's participation in aggravated robbery in concert with other individuals while brandishing a deadly weapon would permit the jury to infer that murder should have been reasonably anticipated as possible consequence). The evidence in this case would have supported a rational jury's determination that Thomas was well aware that Price and the other male participants in the incident had at least one gun brandished each time they forced entry into a home or took someone in the car with them. "Evidence that a defendant knew his co-conspirators might use guns in the course

17

of the robbery can be sufficient to demonstrate that the defendant should have anticipated the possibility of murder occurring during the course of the robbery." *Love*, 199 S.W.3d at 453. Thus, the evidence is sufficient to demonstrate that Thomas should have anticipated that a murder might occur in the course of carrying out the conspiracy.

The court charged the jury under section 7.02(b), which does not require a specific intent to commit murder, but only that the defendant should have anticipated murder occurring in the course of carrying out a felony. Accordingly, we conclude that the evidence is legally sufficient to support Thomas's conviction under section 7.02(b). Because the jury returned a general verdict, and because the evidence is legally sufficient to support a finding of guilt under section 7.02(b), we will not depart from the jury's verdict. *Love*, 199 S.W.3d at 455 (citing *Rabbani v. State*, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992)).

### B. Predicate offenses

In her third point of error, Thomas argues that no rational trier of fact could have found the essential elements of the underlying felony or felonies of this crime beyond a reasonable doubt.

Proof of only one of the two underlying felonies is necessary to support Thomas's conviction. *See Brooks v. State*, 990 S.W.2d 278, 283 (Tex. Crim. App. 1999) (when a jury returns general guilty verdict on indictment charging

18

alternative theories of committing same offense, the verdict stands if evidence supports any of theories charged). Thus, the evidence need only be sufficient to prove that the murder was committed in the course of committing or attempting to commit one of the two underlying offenses—either kidnapping or burglary. *Cardenas v. State*, 30 S.W.3d 384, 389 (Tex. Crim. App. 2000). "Therefore, if the evidence in this case establishes burglary, we need not examine whether there was sufficient evidence to show kidnapping." *Matamoros v. State*, 901 S.W.2d 470, 474 (Tex. Crim. App. 1995).

> With respect to the predicate offense of burglary, the jury was instructed:
>
> A person commits the offense of burglary of a building if, without the effective consent of the owner, the person:
> (1)   Enters a building or any portion of a building not then open to the public, with the intent to commit a felony, theft, or an assault; or
> (2)   Enters a building and commits or attempts to commit a felony, theft, or an assault.

The evidence demonstrated that Price and Hall forced their way into Smith's house, among other residences, wielding guns. The evidence further demonstrates that Price and Hall held Patterson, Smith, and Jones at gunpoint and that Price and Hall eventually shot and killed Jones in Smith's home. This evidence is sufficient for the jury to find that Price and Hall committed a burglary. *See Matamoros*, 901 S.W.2d at 474 (where evidence showed appellant entered the victim's home without permission and subsequently murdered the victim, the court concluded the

19

intent necessary to establish the felony of burglary was demonstrated by the ultimate murder of the victim).

There was also evidence at trial demonstrating that Thomas acted in concert with Price and Hall. Trotter witnessed Thomas wiping the doorknob to Smith's house with her wig, as if to remove evidence that Price and Hall had been there. Patterson observed Thomas telling Hall and Price to "kill 'em all," referring to the two unharmed captives after Jones had already been shot. Moreover, additional evidence was provided by Trotter, Jarmon, and Patterson that Thomas willingly participated in the events and appeared not to be forced to participate in this series of events by Price and Hall. The jury was provided with sufficient evidence to show that Thomas aided or encouraged Price and Hall in the commission of a burglary. Accordingly, we overrule Thomas's third point of error.

## III.  Constitutionality of sentence

The Eighth Amendment of the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. The Eighth Amendment has been incorporated to apply to the States through the operation of the Due Process Clause of the Fourteenth Amendment. *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463, 67 S. Ct. 374, 376 (1947); *see also Robinson v. California*, 370 U.S. 660, 675, 82 S. Ct. 1417, 1425 (1962). The constitutional

prohibition of "cruel and unusual punishment" is measured by the "'evolving standards of decency that mark the progress of a maturing society.'" *Roper v. Simmons*, 543 U.S. 551, 561, 125 S. Ct. 1183, 1190 (2005) (quoting *Trop v. Dulles*, 356 U.S. 86, 101, 78 S. Ct. 590, 598 (1958) (plurality opinion)). Moreover, the "applicability [of the Eighth Amendment's prohibition on cruel and unusual punishment] must change as the basic mores of society change." *Kennedy v. Louisiana,* 554 U.S. 407, 419, 128 S. Ct. 2641, 2649 (2008) (citing *Furman v. Georgia*, 408 U.S. 238, 382, 92 S. Ct. 2726, 2800 (1972)).

The Texas Penal Code provides, in relevant part:

> (a) An individual adjudged guilty of a capital felony in a case in which the state seeks the death penalty shall be punished by imprisonment in the Texas Department of Criminal Justice for life without parole or by death. An individual adjudged guilty of a capital felony in a case in which the state does not seek the death penalty shall be punished by imprisonment in the Texas Department of Criminal Justice for: . . .
>      (2) life without parole.

TEX. PENAL CODE § 12.31(a).  In this framework a defendant convicted of a capital felony faces a minimum penalty of life imprisonment without the possibility of parole.  Since the State did not seek the death penalty, Thomas faced a mandatory sentence of life without parole if convicted.  Section 12.31(b) further provides that the jury is informed that a sentence of life imprisonment is mandatory upon conviction of a capital felony when the state does not seek the death penalty.  *Id.* § 12.31(b).  Section 12.31 leaves no provision for individualized consideration of the

21

defendant's character, background, or other mitigating factors which may justify a lesser sentence than life imprisonment without parole. Thomas asserts that the absence of such a provision violates the constitutional prohibition on cruel and unusual punishment.

Consideration by the jury or judge of mitigating factors is required for most impositions of the death penalty, but that requirement has not been extended to the lesser penalty of life imprisonment without parole for adult offenders. *See Lockett v. Ohio*, 438 U.S. 586, 604–05, 98 S. Ct. 2954, 2964–65 & n.11 (1978). This requirement is applied in death penalty cases due partially to the "nonavailability of corrective or modifying mechanisms with respect to an executed capital sentence." *Id.* at 605, 98 S. Ct. at 2965. The sentence of life in prison without parole is "the second most severe penalty permitted by law." *Harmelin v. Michigan*, 501 U.S. 957, 1001, 111 S. Ct. 2680, 2705 (1991) (Kennedy, J. concurring). A sentence of life imprisonment without parole "'means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of [the convict], he will remain in prison for the rest of his days.'" *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 2027 (2010) (quoting *Naovarath v. State*, 105 Nev. 525, 526, 779 P.2d 944 (1989)). Both the death sentence and the sentence of life without parole preclude the possibility of reentering society; in both circumstances,

22

to the extent that the convicted is given opportunity to grow or engage in self-improvement, there nevertheless is no opportunity to earn his or her freedom on this basis. Thus, "life without parole sentences share some characteristics with death sentences that are shared by no other sentences . . . the sentence alters the offender's life by a forfeiture that is irrevocable." *Id.* at 2027.

Despite the similarities between the death sentence and the sentence of life without parole, the Supreme Court has declined to mandate consideration of mitigating factors for the imposition of life imprisonment without parole in the case of adults. In *Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680 (1991), the Supreme Court rejected an Eighth Amendment objection to a mandatory sentence of life imprisonment without parole. 501 U.S. at 996, 111 S. Ct. at 2702. The petitioner argued that his sentence violated the Eighth Amendment because the mandatory sentence was disproportionate to the crime for which he was convicted (possession of more than 650 grams of cocaine), and because the judge was statutorily required to impose the sentence of life imprisonment without parole and could not consider any mitigating factors. *See id.* at 961–62, 111 S. Ct. at 2683–84. The Court rejected the petitioner's assertion that the Eighth Amendment mandated consideration of mitigating factors in order to impose his sentence:

> [Petitioner] argues that it is "cruel and unusual" to impose a mandatory sentence of such severity, without any consideration of so-called mitigating factors such as, in his case, the fact that he had no prior felony convictions . . . . [T]his claim has no

23

support in the text and history of the Eighth Amendment. Severe, mandatory penalties may be cruel, but they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history . . . . There can be no serious contention, then, that a sentence which is not otherwise cruel and unusual becomes so simply because it is "mandatory."

*Id.* at 994–95, 111 S. Ct. at 2701; *see also id.* at 1006, 111 S. Ct. at 2708 (Kennedy, J., concurring) ("It is beyond question that the legislature 'has the power to define criminal punishments without giving the courts any sentencing discretion . . . .'" (quoting *Chapman v. United States*, 500 U.S. 453, 467, 111 S. Ct. 1919, 1928 (1991))).

Last year in *Miller v. Alabama*, 132 S. Ct. 2455 (2012), the Supreme Court held that the Eighth Amendment forbids a sentencing scheme that mandates life imprisonment without possibility of parole for juvenile homicide offenders. 132 S. Ct. at 2457–58. In *Miller*, the Court relied heavily on the inherent differences between juveniles and adults in order to reach its holding. *See id.* at 2463–66. The Court noted that children may be less deserving of the most severe punishments because they feature a "'lack of maturity and an underdeveloped sense of responsibility.'" *Id.* at 2464 (quoting *Roper*, 543 U.S. at 569, 125 S. Ct. at 1195). The Court further noted that children "'are more vulnerable . . . to negative influences and outside pressures'" than adults and have limited "'contro[l] over their own environment.'" *Id.* (quoting *Roper*, 543 U.S. at 569, 125 S. Ct. at 1195).

The Court also explained that a child's actions are less likely to be indicative of lifelong delinquency because "'[o]nly a relatively small proportion of adolescents'" who engage in illegal activity "'develop entrenched patterns of problem behavior.'" *Id.* (quoting *Roper*, 543 U.S., at 570, 125 S. Ct. at 1196). Thus, children may be more capable of rehabilitation than older convicts and may warrant more opportunity to earn their reentry into society.

Thomas was not a juvenile when she committed the charged offense, nor does she offer any argument that she falls within a category of defendants who, like the juvenile offenders at issue in *Miller*, should not be subject to a sentence of life without parole without consideration of mitigating factors. Accordingly, *Miller* does not apply to her, and *Harmelin* controls Thomas's appeal. Given the Court's holding therein, we cannot agree with Thomas that the Eighth Amendment is violated by the unavailability of any procedural mechanism to allow for consideration of mitigating factors under the mandatory sentencing scheme contained within section 12.31 of the Texas Penal Code. *See Harmelin*, 501 U.S. at 994–95, 111 S. Ct. at 2701; *accord Duran v. State*, 363 S.W.3d 719, 723 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

Section 13 of the Texas Bill of Rights provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted." TEX. CONST. art. I, § 13. This language features only one variation from the

language of the Eighth Amendment of the U.S. Constitution: "[t]he Texas Constitution states its prohibition disjunctively— 'cruel or unusual' punishments—instead of the Eighth Amendment's conjunctive formulation—'cruel and unusual.'" *Duran*, 363 S.W.3d at 723. Thomas relies on the textual difference between the Texas Constitution and U.S. Constitution to support her argument that the state and federal constitutional provisions are not coextensive because of the different meanings of "and" and "or." Thomas argues based on text that a punishment may be prohibited in Texas solely because it is "cruel" or solely because it is "unusual." The Court of Criminal Appeals has rejected the argument that this distinction permits the Texas provision to be interpreted more expansively than the Eighth Amendment with respect to the constitutionality of capital punishment. *See Cantu v. State,* 939 S.W.2d 627, 645 (Tex. Crim. App. 1997). Following that controlling interpretation, we will not assume that those terms mean something different in the Texas Constitution than in the Eighth Amendment of the federal Constitution. *Duran*, 363 S.W.3d at 723.

Thomas argues that the imposition of a mandatory life sentence without parole is unusual within the meaning of Article I, Section 13 of the Texas Bill of Rights, noting that only two categories of defendants (capital murder defendants when the death penalty is not sought and certain repeat sex offenders) face an automatic sentence of life imprisonment without parole. However, "[s]evere,

26

mandatory penalties . . . are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history." *Harmelin,* 501 U.S. at 994–95, 111 S. Ct. at 2701. Moreover, "the fact that a certain non-death-penalty punishment is mandatory, and thereby precludes consideration of mitigation evidence, does not automatically render the punishment cruel and unusual." *Moore v. State*, 54 S.W.3d 529, 541 (Tex. App.—Fort Worth 2001, pet. ref'd).

Thomas further argues that the particularly strong respect for trial by jury in Texas warrants interpreting Article I, Section 13 more broadly than the *Harmelin* Court interpreted the Eighth Amendment. She substantiates this assertion by noting the fact that Texas is one of the few states with jury sentencing.

While Thomas is correct in identifying the longstanding Texas policy of reverence for jury trials and jury sentencing, she presents no authority sufficient to warrant this court in taking the jurisprudential step she proposes. Moreover, the Court of Criminals Appeals has read the Texas Constitution's guaranty of trial by jury not to encompass jury sentencing. *Ex parte Marshall*, 72 Tex. Crim. 83, 85, 161 S.W. 112, 113 (1913). In *Marshall*, the court addressed whether the Texas Constitution requires "that the jury shall assess the punishment." *Id.* The court held that "the fixing of the penalty by a jury" is not "either implied or guaranteed" by the Texas Constitution. *Id.*; *see also Martinez v. State*, 66 S.W.3d 467, 471 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) ("[T]he Texas Constitutional

right to a jury trial does not include the right to have the jury assess punishment."). In light of the foregoing, we cannot now conclude that the mandatory imposition of a life sentence without parole constitutes cruel or unusual punishment within the meaning of Texas Constitution. *Accord Duran*, 363 S.W.3d at 723–24.

We hold that the mandatory life sentence imposed under section 12.31 of the Texas Penal Code is not unconstitutional under the Eighth Amendment of the United States Constitution or Article I, Section 13 of the Texas Constitution. We overrule Thomas's fourth and fifth issues.

## Conclusion

We affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Justices Keyes, Higley, and Massengale.

Do not publish.   TEX. R. APP. P. 47.2(b).