**Opinion issued January 14, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00597-CR

———————————

**DAVID FLORES III, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court No. 9[1]**
**Tarrant County, Texas**
**Trial Court Case No. 1507745**

---

[1]   Pursuant to its docket equalization authority, the Supreme Court of Texas transferred this appeal from the Court of Appeals for the Second District of Texas to this Court. *See* Misc. Docket No. 18–9083, Transfer of Cases from Courts of Appeals (Tex. Jun. 19, 2018); *see also* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases). We are unaware of any conflict between precedent of that court and that of this court on any relevant issue. *See* TEX. R. APP. P. 41.3.

## MEMORANDUM OPINION

David Flores appeals his misdemeanor conviction for resisting arrest. TEX. PENAL CODE § 38.03. In four issues, he argues that the evidence was insufficient to support his conviction, that his conviction should be reversed due to structural errors, and that the trial court erred by refusing his requested jury instruction and by excluding evidence. We affirm.

## Background

In June 2017, Flores was driving a white sedan in Fort Worth. Officer J. Henderson of the Fort Worth Police Department was on patrol when he noticed the white sedan driving below the posted speed limit. He entered the car's license plate number into his computer system inside his patrol vehicle and discovered that the registration on the vehicle had expired. Officer Henderson slowed down to get behind Flores and initiate a traffic stop, but Flores pulled up next to Officer Henderson. Eventually, Flores moved forward and Officer Henderson drove behind him and activated his front emergency lights.

Flores pulled into the parking lot of a gas station and stopped. When Officer Henderson approached him, Flores rolled down the driver's side window. Officer Henderson was in uniform and identified himself to Flores, explaining that the registration on Flores's car had expired. He asked Flores for his driver's license and insurance. Flores responded that he only pulled over because he thought there

was an emergency. Officer Henderson responded that there was not an emergency but that he was detaining Flores because of his expired vehicle registration. Flores told the officer that he was going to record the encounter and pulled out his cell phone, pointing it in Officer Henderson's face. He asked Officer Henderson for his name and badge number, and Officer Henderson again asked for Flores's driver's license and insurance. Flores did not provide them and started rolling up his window. Officer Henderson opened Flores's car door and positioned his body so that Flores could not close the door. When Flores refused to give identifying information, Officer Henderson requested that additional officers respond to the scene.

Officer C. Cook and Officer O. Moncada of the Fort Worth Police Department arrived and took over the stop.[2] Flores remained inside his car, recording with his cell phone, and refusing to provide his driver's license and proof of vehicle insurance to the officers. Flores repeatedly said, "You activated your emergency lights. What is your emergency? How may I help you?" The officers informed Flores that state law required him to provide his driver's license. Eventually, Flores told the officers his name and date of birth.[3] When Officers Cook and Moncada walked away from the car, Flores closed and locked his car

---

[2]     Officer Cook was Officer Moncada's field training officer.

[3]     Officer Henderson left the scene once Flores provided his name and date of birth. He did not witness the remaining events.

door. Flores cracked his window, and the officers attempted to communicate with him through it.

The officers discovered that the registration on Flores's car had been renewed, but the license plate had not been changed. Officer Cook issued Flores two citations: (1) no driver's license on person and (2) displaying a false or fictitious license plate. When the officers presented the citations to Flores, they told him that he would be free to leave once he signed the citations, but Flores still refused. The officers requested a supervisor to respond to the scene.

Sergeant B. Wright arrived and asked Flores to provide his driver's license. When Flores refused to roll down the window and provide his license, Sergeant Wright told him that the officers would break his window, remove him from the car, and arrest him if he did not cooperate. Flores continued to refuse. The officers decided to arrest Flores. In order to gain access, Officer Moncada broke the car window with a baton.

When the officers attempted to physically removed Flores from his car, he pulled away and began flexing his arms. Once removed from the vehicle, Flores and the officers fell to the ground. While on the ground, Flores continued to pull his arms away from the officers as they tried to handcuff him. They could not handcuff Flores because he was flexing his arms away from them. In order to gain compliance, Officer Cook struck Flores twice in the face, which caused him to

4

immediately comply and put his hands behind his back. Officer Cook and Flores were injured during the arrest. Flores was transported to the hospital. The officers inventoried the car and found Flores's driver's license.

Flores was charged with resisting arrest. The jury heard testimony from Officers Henderson, Moncada, and Cook and Sergeant Wright and viewed body camera footage from Officer Moncada and Officer Cook.

Flores testified that the events transpired as the jury saw in the video. He explained that he acted the way that he did because he wanted to be free and go home to his wife. He explained that the stop did not make sense to him, and he was attempting to exercise his rights. He had taken a traffic seminar in 2010, and the teachings of the seminar led him to believe that he did not need to provide his driver's license to a police officer. The jury found Flores guilty, and the trial court sentenced him to 90 days' confinement in jail, probated for 15 months, and a $2,000 fine.

## Sufficiency of the Evidence

In his first issue, Flores challenges the sufficiency of the evidence to support his conviction.

### A. Standard of Review

When reviewing the sufficiency of the evidence, we consider all the evidence in the light most favorable to the verdict to determine whether, based on

that evidence and the reasonable inferences therefrom, the jury was rationally justified in finding guilt beyond a reasonable doubt. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19) (1979)). We consider all evidence in the record, whether it was admissible or inadmissible. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013). The jury is the sole judge of credibility and weight to be given to the testimony of the witnesses, and the jury may accept or reject all or any part of a witness's testimony. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). In the event of conflicting evidence, we presume the jury resolved conflicts in favor of the verdict and defer to that determination. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

A person commits the offense of resisting arrest "if he intentionally prevents or obstructs a person he knows is a peace officer . . . from effecting an arrest, search or transportation of the actor or another by using force against the peace officer or another." TEX. PENAL CODE § 38.03(a). The phrase "using force against the peace officer or another" means "violence or physical aggression, or an imminent threat thereof, in the direction of and/or into contact with, or in opposition or hostility to, a peace officer or another." *Finley v. State*, 484 S.W.3d 926, 928 (Tex. Crim. App. 2016) (quoting TEX. PENAL CODE § 38.03(a) and *Dobbs v. State*, 434 S.W.3d 166, 171 (Tex. Crim. App. 2014)).

"One who uses force to shake off an officer's detaining grip, whether by pushing or pulling, may be guilty of resisting arrest under section 38.03." *Clement v. State*, 248 S.W.3d 791, 797 (Tex. App.—Fort Worth 2008, no pet.) (citing *Sartain v. State*, 228 S.W.3d 416, 424 (Tex. App.—Fort Worth 2007, pet. ref'd). In *Finley*, the Court of Criminal Appeals held that a defendant who "actively pulled away" from an officer who was attempting to arrest him was resisting arrest. 484 S.W.3d at 929. In that case, the defendant tried to pull his arm "forward towards his body—in the opposite direction from the officer's efforts" when an officer tried to handcuff him. *Id.* at 928–29.

## B.  Analysis

Pulling away from an officer is sufficient evidence to support a conviction for resisting arrest. *See id*. The jury heard testimony regarding Flores's interactions with the officers from Officer Moncada, Officer Cook, Sergeant Wright, and Flores. Officer Moncada testified that once the officers broke the car window, Flores "went from passively resisting us . . . to actively resisting us by pulling his arms away and flexing, preventing us from effecting an arrest and getting him in restraints." After they pulled Flores from the vehicle and were standing next to it, Flores raised his arms and pulled away to prevent the officers from restraining him. Once they tripped and fell to the ground, Flores failed to comply with verbal commands to place his arms behind his back and continued to pull his arms away

7

from the officers. Officer Moncada secured one of Flores's arms behind his back, and Officer Cook had to use distractionary strikes before Flores complied to move his other arm behind his back. According to Officer Cook, Flores was "flexing his arms upward" and "using physical force," which prevented Officer Cook from handcuffing him. Sergeant Wright concurred that Flores "wouldn't give his arms. He'd pull away. Stiffen up his arms and make it really difficult to get a handle on him."

The jury also viewed video evidence that corroborated the testimony of the officers. Officer Moncada's body camera shows Flores pulling both of his arms away as he was removed from the vehicle. Once on the ground Flores pulled his left arm away from Officer Moncada as the officer attempted to handcuff him. Officer Cook's body camera shows Flores pulling both of his arms away from the officers as they remove him from the vehicle.

Flores testified that he did not use force and that it was never his intention to resist arrest. On appeal, Flores admits that he pulled away from the officers but claims he did so in an effort to hold on to his cellphone. But Officer Cook's body camera video shows Flores pulling his arm away from officers and continuing to struggle, beyond an attempt to hold a cell phone. The jury was free to judge the credibility of the witnesses, and we defer to the jury's decision when that decision is based upon an evaluation of credibility. *See Lancon*, 253 S.W.3d at 705.

8

Here there was evidence that Flores used force to resist being arrested by pulling his arms away from officer Moncada. Accordingly, we hold that a reasonable trier of fact could have found beyond a reasonable doubt that Flores used force against the officers by pulling away from them. *See Finley*, 484 S.W.3d at 929. Viewing the evidence in the light most favorable to the verdict, we hold that the evidence is sufficient to support the jury's verdict. *See id.* We overrule Flores's first issue.

## Alleged Structural Errors

Flores contends that his conviction should be reversed based on structural error. He argues that the admission of photographs of Officer Cook's injuries and the substance of the State's closing arguments were errors that require reversal. We disagree.

### A.    Standard of Review

Structural errors (those which involve fundamental constitutional systemic requirements) defy analysis by harmless error standards. *Mendez v. State*, 138 S.W.3d 334, 338 (Tex. Crim. App. 2004). More specifically, a structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Id.* at 340 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)). Only error recognized by the United States Supreme Court as structural is immune from harm analysis. *Lake v. State*, 532 S.W.3d 408, 411

(Tex. Crim. App. 2017). The United States Supreme Court has found structural errors in limited types of cases, including: a total deprivation of the right to counsel, lack of an impartial trial judge, unlawful exclusion of grand jurors of defendant's race, violation of the right to self-representation at trial, violation of the right to a public trial, and an erroneous reasonable-doubt instruction to the jury. *See Mendez*, 138 S.W.3d at 340 (quoting *Johnson v. United States*, 520 U.S. 461, 468–69 (1997)).

## B.    Analysis

### 1.    Admission of Photographs

First, Flores argues that the admission of photographs of Officer Cook's injuries was structural error and, therefore, his counsel was not required to object at trial. He argues that photographs of the officer's injuries are not relevant to prove resisting arrest and instead prove the crime of assault of a public servant.

Any error regarding admission of the photographs was not structural error. Error regarding the erroneous admission of evidence, even error involving constitutional issues, is categorized as "trial error." *Rey v. State*, 897 S.W.2d 333, 345 (Tex. Crim. App. 1995). To preserve a complaint about the admission of evidence, a defendant must timely object when the State offers the evidence at trial. *Swilley v. State*, 465 S.W.3d 789, 795–96 (Tex. App.—Fort Worth 2015, no pet.). When the State sought to admit the photographs as evidence during Officer

10

Cook's testimony, Flores's counsel did not object but instead asserted "no objection."[4] Flores failed to preserve his complaint for appellate review. *See* TEX. R. APP. P. 33.1(a).

We overrule Flores's second issue regarding admission of the photographs.

## 2.      State's Closing Argument

Second, Flores argues that the State's closing argument was structural error requiring reversal of his conviction. Flores contends that the State argued for conviction based on a modified version of the statute and misstated the law in closing argument by arguing that failing to comply with verbal instructions, failure to put one's hands behind one's back, and failure to get out of the car demonstrate resisting arrest. Even assuming that error occurred in closing argument, the error was not structural. Prosecutorial misstatements of the law are improper, but they are not constitutional in nature, and they are governed by the harm analysis set out in Texas Rule of Appellate Procedure 44.2(b). *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

---

[4]     Even if Flores had objected, the trial court would not have erred by admitting the photographs because they were relevant to prove the force Flores used against Officers Cook and Moncada. *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016) ("Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); *see* TEX. R. EVID. 401 (relevant evidence defined); TEX. R. EVID. 402 (admissibility of relevant evidence).

Absent an objection to jury argument at trial, nothing is preserved for review. *Threadgill v. State*, 146 S.W.3d 654, 667 (Tex. Crim. App. 2004). The objection must be timely and specific, and the defendant must pursue the objection to an adverse ruling. *Mathis v. State*, 67 S.W.3d 918, 927 (Tex. Crim. App. 2002); *see also* TEX. R. APP. P. 33.1(a)(1). Even if the argument is egregious and an instruction to disregard would not have cured the harm, the complaint is forfeited if the defendant did not object. *Mathis*, 67 S.W.3d at 926–267; *see also Threadgill*, 146 S.W.3d at 667. Flores concedes that his trial counsel never objected to the State's closing argument. Because Flores did not object to the portions of the prosecutors' closing argument that he complains of on appeal, he forfeited any complaint associated with it. *Wright v. State*, 374 S.W.3d 564, 583 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); TEX. R. APP. P. 33.1(a)(1).[5]

---

[5] Even if the complaint about closing argument had been preserved for our review and the closing argument was erroneous, Flores was not harmed by the allegedly erroneous argument. In assessing the impact of harm arising from jury argument error, reviewing courts consider whether the defendant was harmed under Rule of Appellate Procedure 44.2(b). *See Berry v. State*, 233 S.W.3d 847, 858–59 (Tex. Crim. App. 2007). Under that rule, non-constitutional errors "must be disregarded" if they did "not affect substantial rights." TEX. R. APP. P. 44.2(b). In analyzing harm pertaining to improper jury arguments, reviewing courts consider the following: "(1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and, (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction)." *Berry*, 233 S.W.3d at 858–59.

Flores did not object to the allegedly improper statements so no instruction to disregard was given. The written charge correctly stated the law, instructing the

We overrule Flores's second issue regarding the State's closing argument.

## Mistake of Fact

Flores contends that his conviction should be vacated and the case should be remanded for a new trial because the trial court erred by refusing his requested mistake of fact instruction in the jury charge.

### A.    Standard of Review

A defendant is entitled to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or uncontradicted, and regardless of how the trial court views the credibility of the defense. *Allen v. State*, 253 S.W.3d 260, 267 (Tex. Crim. App. 2008). "It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense." TEX. PENAL CODE § 8.02(a). When he raises evidence of a mistaken belief as to the culpable mental state of the offense, a defendant is entitled to an instruction on mistake of fact upon request. *Celis v. State*, 416 S.W.3d 419, 430

---

jury to find Flores guilty if it found he intentionally prevented arrest by pulling his arms away from Officer Moncada. The evidence, including body camera video, showed Flores pulled his arms away from Officer Moncada as the officers attempted to handcuff him. *See Mosley* , 983 S.W.2d 249, 259–60 (Tex. Crim. App. 1998); *see also Schultze v. State*, 177 S.W.3d 26, 44–50 (Tex. App.— Houston [1st Dist.] 2005, pet. ref'd) (op. on reh'g) (though prosecutor's argument improperly invoked matters outside record and no curative measures were taken, there was no harm given relatively minimal degree of misconduct and certainty of conviction).

(Tex. Crim. App. 2013); *Beggs v. State*, 597 S.W.2d 375, 378 (Tex. Crim. App. 1980). A defendant is entitled to an instruction on the defense of mistake of fact if there was evidence that, through a mistake, he formed a reasonable belief about a matter of fact and his mistaken belief would negate his intent or knowledge. *Celis*, 416 S.W.3d at 430; *Beggs*, 597 S.W.2d at 378. The instruction applies only with respect to elements that require proof of a culpable mental state. *Celis*, 416 S.W.3d at 430.

## B.    Analysis

Flores requested that the jury be instructed to find him not guilty if it believed or had a reasonable doubt that he had a "reasonable belief that the only information he was required to provide to the officer was his name and date of birth."

Flores's alleged belief that he had to provide only his name and date of birth to the officers does not negate the required mental state for any element of resisting arrest. As charged, resisting arrest had two elements that required mental culpability: (1) the defendant must intentionally prevent or obstruct an officer from effecting arrest by using force against the officer; (2) the defendant must know the person effecting his arrest is a peace officer. TEX. PENAL CODE § 38.03(a). Flores's mistaken belief that it was lawful to refuse to provide a driver's license does not negate any element of resisting arrest. Flores's belief does not negate that he

14

intentionally prevented or obstructed his arrest by using force against Officer Moncada or that he knew Officer Moncada was a peace officer. Because the statute does not require proof of a culpable mental state as to providing name and date of birth, the mistake of fact instruction Flores sought did not negate the kind of culpability required for the offense. TEX. PENAL CODE § 8.02(a); *Celis*, 416 S.W.3d at 432.

While Flores characterized his request as a mistake of fact instruction, he appears to allege a mistake of law. Section 521.025 of the Transportation Code provides that a person who holds a driver's license must have the license in possession while driving a car and must display the license when asked to do so by a magistrate, court officer, or peace officer. TEX. TRANSP. CODE § 521.025(a)(1–2). Ignorance of the law is not a defense to prosecution unless the defendant acted in reasonable reliance upon (1) an official statement of law by an administrative agency responsible for interpreting it or (2) a written interpretation of the law in a court's opinion or made by a public official with the responsibility of interpreting that law. TEX. PENAL CODE § 8.03(b)(1–2). Even if Flores had requested a mistake of law instruction, he would not have been entitled to it. The teachings of the traffic seminar he allegedly attended do not fall within the exceptions for mistake of law provided by statute. Moreover, Flores was charged with resisting arrest. His

mistaken belief that it was lawful to refuse to provide a driver's license does not negate any element of resisting arrest. TEX. PENAL CODE § 38.03(a).

The trial court did not err in denying Flores's request for a jury instruction. We overrule Flores's third issue.

## Admission of Evidence

Flores contends that the trial court erred by excluding his proffered exhibit, a document he received at a traffic seminar several years before the offense. The exhibit purported to be the work of Eddie Craig, "[c]o-host of Rule of Law Radio." Flores testified that the document was part of the materials for a course he had taken to learn what to do when stopped by police. Flores sought to admit the document to show his state of mind as to whether he intended to commit the offense. He stated that he was offering it not for the truth of the document but to show that his behavior was attributable to the advice he had received in the seminar. The State objected to the admission of the exhibit and the trial court sustained the objection. Though the exhibit was not admitted, the trial court allowed Flores to testify about the seminar's teachings, his understanding of the law, and his reasons for responding as he did to the officers.

## A.    Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A

trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). We uphold a trial court's evidentiary ruling if it was correct on any theory of law applicable to the case. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

## B.    Analysis

The trial court did not abuse its discretion in excluding the exhibit because it was not relevant and its probative value was substantially outweighed by a danger of misleading and confusing the jury.

"Relevant evidence is generally admissible, irrelevant evidence is not." *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018) (citing TEX. R. EVID. 402). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." TEX. R. EVID. 401. "Evidence does not need to prove or disprove a particular fact by itself to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving a fact of consequence." *Gonzalez*, 544 S.W.3d at 370. "A 'fact of consequence' includes either an elemental fact or an evidentiary fact from which an elemental fact can be inferred." *Henley v. State*, 493 S.W.3d 77, 84 (Tex. Crim. App. 2016). Although relevant evidence need not independently prove an element of the charged offense,

17

it must not be "wholly unconnected to an elemental fact." *Id.* "An evidentiary fact that stands wholly unconnected to an elemental fact, however, is not a 'fact of consequence.'" *Id.* If proffered evidence influences no issue in the case, then that evidence is irrelevant and inadmissible. *Id.*

The State was required to prove that Flores intentionally prevented or obstructed Officer Moncada from effecting his arrest by using force against Officer Moncada. *See* TEX. PENAL CODE § 38.03(a). While Flores's intent is a fact of consequence, his exhibit did not prove lack of intent to commit the offense of resisting arrest. *See Henley*, 493 S.W.3d at 88. Flores's specific conduct that constituted resisting arrest was neither attributable to nor explained by the exhibit. It had no tendency to prove that he lacked the intent to obstruct the officer when he pulled his arms away from Officer Moncada. The trial court properly excluded the exhibit because it was not relevant.

Even assuming the document was relevant, the trial court did not err in excluding the exhibit because it was substantially more prejudicial than probative. The trial court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403; *see Gigliobianco v. State*, 210 S.W.3d 637, 640 (Tex. Crim. App. 2006); *Montgomery v. State*, 810 S.W.2d 372,

388 (Tex. Crim. App. 1990). When conducting a Rule 403 analysis, a court must balance the probative force of and the proponent's need for the evidence against (1) any tendency of the evidence to suggest decision on an improper basis; (2) any tendency of the evidence to confuse or distract the jury from the main issues; (3) any tendency of the evidence to be given undue weight by a jury that has not been quipped to evaluate the probative force of the evidence; and (4) the likelihood that presentation of the evidence will amount to undue delay. *Gigliobianco*, 210 S.W.3d at 641–42. The probative force of evidence refers to how strongly it serves to make the existence of a fact of consequence more or less probable. *Gonzalez*, 544 S.W.3d at 372. We will uphold a trial court's ruling on a Rule 403 balancing test, whether explicit or implied, if it is within the "zone of reasonable disagreement." *Jamari v. State*, 273 S.W.3d 745, 753 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *see also Martinez*, 327 S.W.3d at 736 (When reviewing the trial court's determination of probative and prejudicial value of evidence under Rule 403, appellate courts reverse only upon showing of clear abuse of discretion).

Here, the probative value was low. The document containing misstatements of law did not tend to make it more or less likely that Flores resisted arrest by using force against Officer Moncada or that he knew Officer Moncada was a peace officer. Consequently, Flores's need for the evidence was weak. We evaluate the defendant's need for the evidence by looking at whether the fact related to a

19

disputed issue and whether the State had other evidence establishing that fact. *Gonzalez*, 544 S.W.3d at 372. Flores presented other evidence to explain his actions. He testified about what he had been taught in the seminar, his understanding of the law, and the reasons he responded to the officers as he did. The jury also viewed video of Flores during the encounter and could observe his actions and demeanor. This factor weighs in favor of exclusion.

The evidence was likely to confuse the jury. The trial court explained: "The Court is concerned that it would create confusion for the jury and be misinterpreted as actual evidence, which is, in fact hearsay evidence." The document contained several misstatements of law that could have distracted the jury from deciding the law based on the court's instructions. The jury could have easily misinterpreted the exhibit. This factor weighs in favor of exclusion.

Finally, while introducing the document would not have been time consuming, taking the time to assure that the jury had the correct impression of the law after they viewed the document containing misstatements of the law could have been a time-consuming distraction. This factor supports the court's decision to exclude the evidence.

Consequently, the trial court did not err in excluding the evidence under Rule 403. We overrule Flores's fourth issue.

## Conclusion

We affirm the judgment of the trial court.

Peter Kelly
Justice

Panel consists of Justices Keyes, Lloyd, and Kelly.

Do not publish. TEX. R. APP. P. 47.2(b).